*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0008P (6th Cir.)
File Name: 00a0008p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ROBERT DALE MURR,
    *Petitioner-Appellant,*

*v.*
    No. 98-6202

UNITED STATES OF AMERICA,
    *Respondent-Appellee.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
Nos. 97-00158; 90-00026—Henry R. Wilhoit, Jr.,
Chief District Judge.

Argued: September 22, 1999

Decided and Filed: January 7, 2000

Before: MERRITT and CLAY, Circuit Judges; ALDRICH,
District Judge.[*]

---

[*]The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

———————————

**COUNSEL**

**ARGUED:** Herbert S. Moncier, Knoxville, Tennessee, for Appellant.    James E. Arehart, OFFICE OF THE U.S. ATTORNEY, Lexington, Kentucky, for Appellee. **ON BRIEF:** Herbert S. Moncier, Knoxville, Tennessee, for Appellant.    Frances E. Catron, OFFICE OF THE U.S. ATTORNEY, Lexington, Kentucky, for Appellee.

———————————

**OPINION**

———————————

CLAY, Circuit Judge.    Petitioner, Robert Dale Murr, appeals an order entered by the district court denying Petitioner's motion to vacate his narcotics trafficking conviction and sentence pursuant to 28 U.S.C. § 2255.    For the reasons set forth below, we AFFIRM the judgment of the district court.

**BACKGROUND**

*Procedural History*

**1.    *Eastern District of Tennessee Prosecution***

On August 22, 1989, a grand jury in the Eastern District of Tennessee issued a six-count indictment charging Petitioner with various narcotics trafficking offenses.    Petitioner was charged with two counts of distribution of cocaine; the first count charged that Petitioner distributed ten ounces on July 4, 1989, and the second charged that he distributed 500 grams or more on August 17, 1989, in violation of 21 U.S.C. § 841(a)(1).    Also, Petitioner was charged with four counts of using a telephone or telephone paging device to facilitate these cocaine distributions, in violation of 21 U.S.C. § 843(b).

169 F.3d 1035, 1041 (6th Cir. 1999) (emphasis added).  The same holds true here.  Under the facts of the instant case, the jury's guilty verdicts on Counts 2 through 11 required the jurors to unanimously agree that Petitioner had committed at least three predicate narcotics violations and that these violations were related to one another because they were all part of the cocaine distribution conspiracy.

Accordingly, the district court's failure to expressly instruct jurors that they must unanimously agree which offenses constitute the CCE did not have a substantial and injurious influence or effect on the jury's guilty verdict in the CCE count.  *See Long*, 190 F.3d at 476 n.3 (concluding that the district court's failure to give the CCE unanimity instruction required under *Richardson* "was clearly harmless as the jury also unanimously found him guilty of more than three drug violations committed in the course of the ongoing conspiracy to distribute cocaine"); *Escobar-de Jesus*, 187 F.3d at 162 (holding that the erroneous CCE instruction was harmless where "[t]he evidence introduced to support the separate convictions on the [predicate narcotics violations] also establishes inescapably their relatedness").

Accordingly, the district court's failure to instruct the jurors that they must unanimously agree about which narcotics violations constitute the "continuing series" of violations for CCE purposes does not require vacatur of Petitioner's CCE conviction and sentence because the error was harmless.

For the reasons set forth above, we AFFIRM the judgment of the district court.

On the eve of the Tennessee trial, the government proposed a plea agreement to Petitioner's attorney.  Following negotiations, the parties presented a conditional plea agreement to Eastern District of Tennessee Judge Jarvis on January 16, 1990.  Judge Jarvis deferred acceptance of the plea agreement, pending a presentence investigation.  The presentence investigation was completed on April 10, 1990.  On June 12, 1990, Judge Jarvis accepted the plea agreement and sentenced Petitioner to 63 months of imprisonment and a $70,000 fine.  As part of this agreement, the government agreed not to further charge Petitioner in the Eastern District of Tennessee or in the Northern District of Georgia for certain offenses of which it had knowledge.

### 2.    *Eastern District of Kentucky Prosecution*

In February of 1990, during the presentence investigation mentioned above, the government uncovered facts indicating that Petitioner had been a leader in a cocaine trafficking conspiracy in the Eastern District of Kentucky. Subsequently, in March of 1991, while Petitioner was serving the sentence imposed in the Tennessee prosecution, a grand jury in the Eastern District of Kentucky issued an indictment charging Petitioner and twelve other defendants with narcotics trafficking and related offenses. Specifically, Petitioner was charged with 1) conspiracy to distribute cocaine in violation of 21 U.S.C. § 846 (Count 1); 2) eleven substantive counts of cocaine possession with the intent to distribute, and aiding and abetting, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Counts 2 through 12); and 3) conducting a continuous criminal enterprise ("CCE") in violation of 21 U.S.C. § 848 (Count 13).

On October 9, 1991, a jury trial resulted in Petitioner's conviction on Counts 1 through 11 and Count 13 of the indictment.  The district court later vacated Petitioner's conviction on Count 10 as duplicitous of Count 9; Petitioner's conspiracy conviction under Count 1 was vacated because it merged with his CCE conviction under Count 13.  Petitioner was ultimately sentenced to 240 months imprisonment, to be

served concurrently with his prior drug sentence from the Eastern District of Tennessee. Petitioner's conviction and sentence were subsequently affirmed on direct appeal. *See United States v. Phibbs*, 999 F.2d 1053 (6th Cir. 1993), *cert. denied*, 510 U.S. 1119 (1994).

### 3. *Petitioner's § 2255 Motion to Vacate his Eastern District of Kentucky Conviction and Sentence*

On April 23, 1997, Petitioner filed the § 2255 motion currently on appeal to vacate his conviction and sentence imposed in the Eastern District of Kentucky. Petitioner principally argued that, in light of the preceding Tennessee conviction, his Kentucky conviction for substantive cocaine violations and for operation of a CCE involving cocaine distribution violated his rights under the Double Jeopardy and Due Process Clauses of the Fifth Amendment, and under principles of res judicata.

On March 31, 1998, the magistrate judge assigned to the case recommended that Petitioner's motion be denied. Petitioner subsequently filed objections to the magistrate's Report and Recommendation. On July 6, 1998, the district court issued an opinion and order adopting the magistrate's Report and Recommendation, and dismissing Petitioner's § 2255 motion. Petitioner then moved to vacate the order dismissing his § 2255 motion on grounds not raised in the original petition; this last motion was denied on August 10, 1998.

In denying Petitioner's § 2255 motion, the district court granted a certificate of appealability on only two issues: (i) whether Petitioner was subject to double jeopardy; and (ii) whether Petitioner was entitled to severance from one of his co-defendants for purposes of trial. Petitioner then filed a timely notice of appeal.

- May 8 and 9, 1989 (counts 9 and 10); and

- May 18, 1989 (count 11).[3]

(J.A. at 156-63.) At trial, the government presented substantial evidence that these narcotics violations were committed as part of the wide-ranging conspiracy, headed by Petitioner, to acquire and distribute cocaine. Notably, Petitioner — who does not contest the accuracy of the evidence presented at trial — nowhere contends that these violations were isolated events that by chance happened in sequence and involved the same people.

In *United States v. King*, a case with a strikingly similar fact pattern, this Court held that the district court's failure to give the CCE unanimity instruction could amount to no more than harmless error where the trial evidence made clear that the predicate narcotics violations were part of a "continuing series":

> In this case, King [the defendant] was convicted on all of the underlying predicate offenses. We thus have no doubt that the jury was unanimous in finding that King committed not only three, but nine marijuana-related predicate offenses. Moreover, the evidence presented to the jury clearly established that these offenses were related to one another, because they were all a part of King's ongoing distribution business. King has never claimed otherwise. *Given this record, no rational jury could unanimously find King guilty of the underlying predicate offenses without also unanimously finding that they were related to each other.* Consequently . . . the alleged error did not affect the verdict in this case and was harmless.

---

[3] The jury acquitted Petitioner of count 12, which charged cocaine possession with the intent to distribute on April 11, 1990 — after Petitioner had already been in federal custody for at least eight months.

sure that the error had no or very slight effect or influence on the jury's decision, the verdict and judgment must stand. *O'Neal v. McAninch*, 513 U.S. 432, 436-38 (1995). To warrant habeas relief because of incorrect jury instructions, Petitioner must show that the instructions, as a whole, were so infirm that they rendered the entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

The error here was harmless. First, the jury's decision to convict Petitioner on Counts 2 through 11 of the indictment — which were alleged to be predicate violations supporting the CCE count — necessarily establishes that the jurors agreed unanimously that he was guilty of those offenses. "This decision ensures that the concern at the core of the *Richardson* decision — namely, that jurors might convict on the basis of violations for which there was non-unanimity — is not present." *Escobar-de Jesus*, 187 F.3d at 162.

Second, given the evidence adduced at trial, in finding Petitioner guilty of Counts 2 through 11, the jury necessarily made factual findings establishing that these violations were related to one another. As noted, § 848(c) requires that jurors agree that the "series" of narcotics violations be "continuing" in nature — in other words, that they be related to each other in some way. *See, e.g., United States v. Edmonds*, 80 F.3d 810, 822 (3d Cir. 1996) (*en banc*) (holding that the jury must unanimously agree that the underlying narcotics violations were "related" to each other for CCE purposes). In the instant case, Counts 2 through 11 each charged that while in Lexington, Kentucky, the defendants, including Petitioner, possessed cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2, on or about the following time periods:

- August 25, 1988 (count 2);

- September, October and November of 1988 (counts 3, 4 and 5);

- February, March and April of 1989 (counts 6, 7 and 8);

### Facts

The following factual background is taken directly from this Court's opinion affirming Petitioner's conviction and sentence on direct appeal. *See Phibbs*, 999 F.2d at 1060-62.

On February 23, 1990, Jerry Parks was detained by FBI agents in Nashville, Tennessee, in connection with an ongoing drug investigation. After discussions with the government, he agreed to cooperate in the probe.

Parks revealed that his friend, Robert Murr, had visited him a number of times during the summer of 1988 when Parks was residing in a federal 'halfway house' in Bowling Green, Kentucky. On some of these occasions, Murr would deliver cocaine to him to sell. Murr wanted Parks to come to Knoxville, Tennessee, to work for him in his drug distribution venture. He directed Robert Phibbs, who was on the payroll of one of Murr's legitimate businesses, Automotive Enterprises, to write a letter to Parks' federal probation officer requesting that he be allowed to transfer to the Knoxville area. Murr told Phibbs to promise the probation authorities that Parks would be provided with a job at Automotive Enterprises. His efforts were rewarded, and Parks was permitted to move to Knoxville.

Parks' position at Automotive Enterprises was a subterfuge; he actually spent his time helping Murr distribute cocaine. In August of 1988, Murr arranged to sell four kilograms of cocaine to Billie Dye and David Hurt. Parks and Dye gathered approximately $100,000 in cash and, pursuant to Murr's instructions, started out in Lexington, Kentucky, where they were to meet with Murr. . . . [T]he transaction was consummated the next day.

Beginning in September of 1988, Parks traveled with Murr and another drug dealer named Tommy McKeehan to the Lexington area every few weeks to obtain multi-kilogram quantities of cocaine. During the first such trip, Parks became acquainted with Murr's drug source, Kenneth Lawson. Whenever Murr needed cocaine, he

went with McKeehan to a pay telephone and called Lawson. After a deal had been struck, Murr, Parks and McKeehan would meet at Judy Murr's [Petitioner's ex-wife] residence early in the morning before leaving for Kentucky. Murr and McKeehan would then organize the money to be used in the sale into $1,000 bundles, putting these stacks in brown paper bags.

Aside from taking part in these trips, Parks served as the 'front man' for the drug distribution ring. Murr introduced Parks to his regular cocaine customers, including Raymond Huckelby and Edward Rogers. At such meetings, Murr would instruct Parks with regard to the amount of cocaine to be supplied, the price of the drug, and how often it was to be furnished. He would then tell Parks and the purchaser to exchange telephone numbers, beeper numbers, and beeper codes in order to stay in contact. For several months, Parks delivered drugs to Murr's customers in this fashion. When Murr was unavailable, Parks would turn over the money he received in return to either Phibbs or to Judy Murr.

In October of 1988, Parks first encountered Victor Rojas while on one of the excursions to Kentucky he made with Murr and McKeehan to buy cocaine. Rojas, who was Lawson's supplier, brought the drugs to the location where the sale would take place. . . .

Parks, Murr, and McKeehan would either give their money to Lawson or he would leave it in Rojas' vehicle, taking the cocaine for which they had paid. McKeehan would then be given his share. After the drugs were driven back to Knoxville, Parks and Murr stashed them at the house Murr rented for his girlfriend, Diane Whited. She stored the cocaine in the attic in a green duffel bag with a padlock on it. In order for Parks to get the cocaine from Whited's house to distribute, he would have to contact Murr, who, in turn, would call Whited to set up a time for the two of them to come over. Parks went to Whited's residence 15 to 20 times in the fall of 1988 to pick up drugs. On at least one occasion, Whited assisted Murr and Parks in breaking down the cocaine into salable quantities.

elements, namely the several 'violations,' in respect to each of which the jury must agree unanimously and separately." *Id.* at 1710. Because the Court engaged in such deliberations, Petitioner claims that the decision in *Richardson* was a matter of substantive law, and therefore, *Teague* does not apply. As a result, the holding in *Richardson* should apply retroactively. We agree with Petitioner's contention.

*Richardson* involves the substantive construction of a criminal statute. The Court in *Richardson* examined the meaning of § 848(c)'s phrase "series of violations," and determined that it meant the jury must agree that the defendant committed some continuing series of violations, and which specific violations make up that continuing series. *Richardson*, 119 S. Ct. at 1713. Therefore, in light of *Bousley*, *Richardson* applies retroactively because it set forth substantive law. *See Bousley*, 118 S. Ct. at 1609.

The analysis does not, however, end at this point. We affirm Petitioner's CCE conviction and sentence because the harmless error doctrine applies and the district court's error in failing to instruct the jury was harmless. The *Richardson* Court noted the application of harmless error in such instances, as it remanded the case to the United States Court of Appeals for the Seventh Circuit to determine "whether to engage in harmless error analysis, and if so, whether the error was harmless in this case." *Richardson*, 119 S. Ct. at 1713. *See Neder v. United States*, 119 S. Ct. 1827, 1837 (1999) (holding that the trial court's omission during its jury instructions of an essential element of the offense charged is subject to harmless error review); *United States v. Escobar-de Jesus*, 187 F.3d 148, 161 (1st Cir.1999) (holding that the district court's failure to include a CCE unanimity instruction under *Richardson* was only harmless error).

Moreover, for purposes of federal habeas corpus review, a constitutional error that implicates trial procedures shall be considered harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993). If this Court is

applies retroactively; therefore, his CCE conviction and sentence must be vacated because the district court failed to so instruct the jury.

In *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987), the Supreme Court held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final." In *Teague v. Lane*, 489 U.S. 288 (1989), the Court later modified this rule to answer questions of retroactivity for cases on collateral review. In *Teague*, the Court stated that as a general rule, "new constitutional rules of criminal procedure will not be applicable to these cases which have become final before the new rules are announced." *Id.* at 310. The Court then set forth two exceptions to this general rule. First, a new rule should apply retroactively if it places "certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." *Id.* at 311 (citation and internal quotation marks omitted). Second, a new rule should apply retroactively if it requires the observance of "those procedures that are implicit in the concept of ordered liberty." *Id.* (citation and internal quotation marks omitted). Hence, the central issue of whether retroactivity applies is whether *Teague* applies. *Teague* only applies if the new case for which retroactive effect is sought announces a procedural rule; if the new case announces a substantive rule, *Teague* does not apply. *See Bousley v. United States*, 118 S. Ct. 1604, 1609 (1998).

*Richardson* involves the issue of jury unanimity. There, the Court determined that a jury must unanimously agree not only that the defendant committed some "continuing series of violations," but also about which specific "violations" make up that "continuing series." *Richardson*, 119 S. Ct. at 1713. To arrive at this holding, the Court interpreted 21 U.S.C. § 848, the Continuing Criminal Enterprise statute. The Court stated that "we must decide whether the statute's phrase 'series of violations' refers to one element, namely a 'series,' in respect to which the 'violations' constitute the underlying brute facts or means, or whether those words create several

Keeping the cocaine at Whited's house proved to be unworkable because Parks needed ready access to the stash, and Murr would not let Parks enter the house without him. At the end of November 1988, Murr told Parks to bury the cocaine in a pipe on the side of a hill behind Automotive Enterprises. The only person besides Parks who knew exactly where the drugs were hidden was Phibbs.

The drug distribution ring was so successful that Murr and Lawson talked about what should be done with the rather substantial profits. Murr recognized that he could 'launder' some of the funds through his business partner, Ernie Nicely. The companies that he had established with Nicely were not doing so well, so Murr began to funnel money to him to keep them afloat. Nicely understood that the bulk of this money was derived from drug sales.

After November of 1988, Murr no longer wanted to accompany Parks and McKeehan to Kentucky to obtain cocaine. Consequently, he sent the two of them alone to complete deals in February, March, April, and May of 1989. . . .

[O]n May 22, 1989, the Knoxville police arrested Parks for burglary. He was wounded while in the process of being apprehended. The authorities subsequently seized a set of electronic scales and six address books from him. One of these books contained Parks' drug-related activities that month, and included a coded list of some of Murr's customers, as well as a description of the drug ring's cocaine inventory.

Despite Parks' arrest, the drug ring continued to operate. Jim Hurt soon took over some of Parks' functions, delivering cocaine for Murr to Edward Rogers, and possibly others. However, when Rogers complained about the poor quality of the cocaine that Hurt was selling him, Murr began to personally supply Rogers. This continued until August of 1989, when Murr himself was arrested on federal drug charges. . . .

Murr had entered into a plea agreement with the government in January of 1990 in the Eastern District of

Tennessee. It was not until Parks had been questioned in late February of 1990 that the government became aware of Murr's cocaine venture extending into Kentucky.

## DISCUSSION

### *Standard of Review*

"In reviewing the denial of a 28 U.S.C. § 2255 petition, this Court applies a *de novo* standard of review of the legal issues and will uphold the factual findings of the district court unless they are clearly erroneous." *Hilliard v. United States*, 157 F.3d 444, 447 (6th Cir. 1998). Where no evidentiary hearing is held, the district court's denial of the motion will be upheld where "the files and records of the case conclusively establish that the prisoner is entitled to no relief." 28 U.S.C. § 2255 (1994); *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986).

### I. Double Jeopardy

Petitioner first argues that his constitutional rights were violated because the government knew of the facts underlying his subsequent conviction in the Eastern District of Kentucky before Petitioner was convicted in the Eastern District of Tennessee. We disagree.

It is well-settled law that failure to raise an argument at trial or on direct appeal is waived on collateral review under § 2255, absent a showing of both cause and actual prejudice. *United States v. Frady*, 456 U.S. 152 , 164-65, 167 (1982). In this case, Petitioner's double jeopardy claim has been raised for the first time on collateral review. Petitioner did not present this issue at pretrial, at trial, or on direct appeal. Rather, on direct appeal, Petitioner argued only that his prosecution in the Eastern District of Kentucky violated his earlier plea agreement in the Eastern District of Tennessee. Petitioner makes no effort to show cause to excuse this procedural default, nor has he attempted to show that he suffered "actual prejudice" from the alleged error that would

## III. Specific Unanimity Jury Instruction / Retroactive Application of *Richardson.*

The district court's failure to instruct the jurors that they must unanimously agree about which narcotics violations constitute the "continuing series" of predicate violations for continuing criminal enterprise purposes, does not require that Petitioner's CCE conviction and sentence be vacated.[2]

In order to sustain a conviction for engaging in a CCE, the government must prove (i) a felony violation of a federal narcotics law; (ii) as a part of a "continuing series" of at least three violations; (iii) "in concert with five or more persons"; (iv) for whom the defendant is an organizer, supervisor or manager; and (v) from which he derives substantial income or resources. *See* 21 U.S.C. § 848(c)(1994). In *Richardson v. United States*, 119 S. Ct. 1707, 1713 (1999), the Supreme Court held for the first time that a jury must unanimously agree on which specific violations constitute the "continuing series" of three or more predicate violations required to prove that a defendant engaged in a CCE. Moreover, the Court held that the district court erred by failing to instruct the jurors that the "violations" are themselves elements of the CCE and, therefore, the jury was required to agree unanimously about which three (or more) related drug crimes Petitioner committed. *Id.* On appeal, Petitioner argues that *Richardson*

---

[2] Following oral argument, the Court allowed Petitioner to file a supplemental brief only on the CCE issue. The government was permitted to respond. On October 22, 1999, Petitioner filed a Supplemental Brief and Addendum, in which Petitioner argued that the district court's order denying the § 2255 motion should be reversed because the district court did not consider that the government allegedly knew all facts forming the basis for the subsequent prosecution in Kentucky before the final judgment was entered on the Tennessee charges. Petitioner did not argue or provide any information regarding the CCE issue. Hence, Petitioner's supplemental brief and addendum was not submitted in compliance with this Court's order and we will not consider the arguments raised by Petitioner in his Supplemental Brief. *See, e.g., United States v. Universal Management Servs., Inc. Corp.*, 191 F.3d 750, 759 (6th Cir. 1999) (citing *Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir. 1986) (refusing to consider argument raised for the first time by plaintiff in reply brief)).

Petitioner has not made the required showing of factually specific and compelling prejudice as a result of the joint trial. He offers absolutely no evidence in support of his claim that Lawson's absence constituted extreme prejudice to him in that the jury assumed that Lawson's absence indicated that Petitioner was guilty. Indeed, the facts on record indicate otherwise. First, as this Court noted on direct appeal, the district court issued curative instructions admonishing the jury to disregard Lawson's absence in determining the guilt or innocence of any co-defendant, and instructing the jury to consider only the evidence against each particular defendant in determining his or her guilt or innocence. *See Zafiro*, 506 U.S. at 539 (stating that while separate trials may be necessary if the risk of prejudice is high, "less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice"); *United States v. Mays*, 69 F.3d 116, 120 (6th Cir. 1995) (holding that threat of "spillover evidence" did not require severance where the district court instructed the jury to consider the culpability of each defendant separately).

Second, also noted on direct appeal, the jury acquitted co-defendant William Baird, a close friend and business associate of Lawson, although charged in multiple counts along with Lawson. This strongly suggests that the jury made the required individualized determination of each defendant's guilt, without allowing Lawson's absence to prejudice his co-defendants. *See, e.g., United States v. Rugiero*, 20 F.3d 1387, 1391 (6th Cir. 1994) (stating that the jury's acquittal of some co-conspirators while others were convicted demonstrated that the jury was able to consider the evidence and charges against each defendant individually).

Accordingly, the district court properly denied Petitioner's § 2255 motion upon finding that Petitioner was not entitled to severance from co-defendant Kenneth Lawson for purposes of trial, even though Lawson was tried in absentia.

undermine the entire integrity of the trial, as required under *Frady*. *Id.* at 168-70.

Petitioner failed to meet the standards of *Frady*; he is therefore barred from raising his double jeopardy claim for the first time on collateral attack under § 2255. *See, e.g., Napier v. United States*, 159 F.3d 956 (6th Cir. 1998) (holding that claims raised for the first time on collateral attack under § 2255 are waived, where petitioner fails to make the required showing of both cause and actual prejudice for his failure to raise these claims earlier); *see also United States v. Branham*, 97 F.3d 835, 842 (6th Cir. 1996) (noting that "[t]he defense of double jeopardy is personal and is capable of waiver").

In any event, Petitioner's double jeopardy argument also fails on the merits. The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. Double jeopardy protection "applies both to successive punishments and to successive prosecutions for the same criminal offense." *United States v. Dixon*, 509 U.S. 688, 696 (1993). In determining whether a defendant has been subjected to successive prosecutions for the same offense, this Court applies the "same elements" test originally set forth in *Blockburger v. United States*, 284 U.S. 299 (1932). "That test asks whether each offense contains an element not contained in the other. A defendant will be considered placed in double jeopardy only if 'every violation of one statute entails a violation of another.'" *United States v. Forman*, 180 F.3d 766 (6th Cir. 1999) (citation omitted) (holding that a defendant previously acquitted of obstruction of justice and criminal contempt could be subsequently tried for theft of government property and conversion, even though both prosecutions arose from the same underlying conduct).

Petitioner urges this Court to follow *Rashad v. Burt*, 108 F.3d 677 (6th Cir. 1997), *cert. denied*, 522 U.S. 1075 (1998). In *Rashad*, the arresting officers discovered cocaine in the defendant's house and car. As a result, the defendant was

tried separately for the cocaine found in the different locations. *Rashad*, 108 F.3d at 679. This Court, applying the "same evidence" test, held that the state violated defendant's double jeopardy rights. *Id.* at 680. However, the *Forman* Court recently held that *Rashad* was limited to its unique facts, in that "the issue . . . was whether the defendant had committed one as opposed to two discrete violations of the same statute, not whether the defendant was charged twice for the same violation." *Forman*, 180 F.3d at 769. In light of the Supreme Court's express rejection of the "same evidence" test in *Dixon*, this Court held that *Rashad* "is to be limited in its application to circumstances such as were present in the case." *Id.* at 770.

The circumstances here are distinguishable, given that the two indictments charge different violations on different days, in different places, which involve different people. Comparison of the charges in the two prosecutions reveals no double jeopardy violation. Both the offenses charged as well as the underlying conduct that gave rise to the two separate prosecutions are distinct. Petitioner's conviction in the Eastern District of Tennessee arose out of Petitioner's sale of cocaine to an individual named Bobby Freeman on two specific occasions (July 4, 1989, and August 17, 1989) in Tennessee. Accordingly, the government needed only to prove that Petitioner knowingly or intentionally distributed cocaine to Bobby Freeman in Tennessee on those two specific dates.

Petitioner's conviction in the Eastern District of Kentucky, on the other hand, arose out of his role in obtaining cocaine in Lexington, Kentucky, between August 1988 and May 1989, with the intent to subsequently distribute the cocaine he acquired. As noted, he was charged with a conspiracy count, a CCE count, and eleven narcotics trafficking counts alleging cocaine possession in Lexington with the intent to distribute. Evidence at the Kentucky trial established that Petitioner made or directed several trips into the Lexington area with his co-conspirator, Jerry Parks, to buy cocaine from co-defendants Victor Rojas and Kenneth Lawson, which

Second, *Crosby* does not alter the conclusion this Court reached on direct appeal. *Crosby* does not directly apply to Petitioner because Petitioner was present at trial; nor can Petitioner claim that his trial was tainted by an error of constitutional dimensions because *Crosby* held only that a trial in absentia is prohibited by Federal Rule of Criminal Procedure 43. The *Crosby* Court did not address whether a trial in absentia is also prohibited by the Constitution. Further, Petitioner cannot point to authority holding that violation of a co-defendant's rights under the Federal Rules of Criminal Procedure constitutes a violation of Petitioner's constitutional rights.

Accordingly, we see no reason to depart from this Court's earlier conclusion that severance was not required. "As a general rule, persons jointly indicted should be tried together." *United States v. Stull*, 743 F.2d 439, 446 (6th Cir. 1984). Further, "[t]he jury must be presumed capable of sorting out the evidence and considering the cases of each defendant separately." *United States v. Welch*, 97 F.3d 142, 147 (6th Cir. 1996)*; United States v. Moore*, 917 F.2d 215, 222 (6th Cir. 1990). The district court should grant severance to properly joined defendants "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993); *United States v. Long*, 190 F.3d 471, 476 (6th Cir. 1999). Lastly, the defendant bears the burden of producing "a strong showing of factually specific and compelling prejudice" that will "mislead or confuse the jury." *Moore*, 917 F.2d at 221; *United States v. Davis*, 177 F.3d 552, 558 (6th Cir. 1999) (stating that "a defendant seeking severance at trial from co-defendants bears a strong burden and must demonstrate substantial, undue, or compelling prejudice"). If the defendant is "able to show some potential jury confusion, such confusion must be balanced against society's interest in speedy and efficient trials." *Moore,* 917 F.2d at 221.

instruction that each defendant's case was to be considered separately and, further, that Lawson's flight could not be used as evidence against anyone but him. The jury appears to have heeded the court's admonition, as defendant William Baird, allegedly a close companion of Lawson's, was acquitted of conspiracy. Other defendants were acquitted of some of the distribution counts brought against them. Thus, the jury was plainly able to view them as distinct individuals in rendering its verdicts. As this was so, the district court did not abuse its discretion in denying the motion to sever Lawson.

*Phibbs*, 999 F.2d at 1067-68.

On collateral attack, Petitioner urges this Court to reconsider this conclusion in light of the Supreme Court's decision in *Crosby v. United States*, 506 U.S. 255 (1993). In *Crosby*, the Court held that Federal Rule of Criminal Procedure 43 prohibits the trial in absentia of a defendant who is not present at the beginning of trial. *Crosby*, 506 U.S. at 753. Petitioner argues that because Lawson's rights under the Federal Rules of Criminal Procedure were violated by his trial in absentia, Lawson's case could not be tried. If, as Petitioner claims, Lawson's case could not be tried, Petitioner contends that his case, in turn, could not be properly joined with an untriable case.

First, we note that on the issue of absentia, Petitioner does not seek to assert the rights of Lawson. Rather, Petitioner takes the position that his own entitlement to a fair trial was denied by the adverse effect of co-defendant Lawson's absence. Therefore, Petitioner has standing to raise the absentia issue. *See United States v. Edmonson*, 962 F.2d 1535, 1544 n.1 (10th Cir. 1992); *United States v. Candoli*, 870 F.2d 496, 501 (9th Cir. 1989) (stating that while defendant could not challenge the propriety of a jury instruction regarding the flight of her co-defendant, she could challenge it on the ground that it prejudiced her right to a fair trial).

Petitioner intended to later sell to his own customers. This conduct gave rise to the eleven substantive cocaine offenses charged in the Eastern District of Kentucky indictment: possession of cocaine with the intent to distribute.

Further, there is no double jeopardy problem under *Blockburger*. Petitioner's violation of federal drug laws in Kentucky were distinct from his criminal acts in Tennessee. A jury could find that Petitioner distributed cocaine to Bobby Freeman on July 4 and August 18, 1989, in Tennessee, and not find that he repeatedly possessed cocaine in Lexington with intent to distribute, as alleged in the Kentucky indictment. Similarly, a jury could easily find that Petitioner committed the substantive narcotics violations in Kentucky without having sold cocaine to Bobby Freeman in Tennessee, as alleged in the Tennessee indictment. Whereas the offenses charged had different elements and arose out of separate conduct, conviction in one case simply would not require conviction in the other. As Magistrate Judge James B. Todd concluded in his Report and Recommendation:

> Here, the two indictments charge different violations on different days, in different places, which involve different people. The simple fact that all of the charges against Murr involve cocaine does not automatically invoke a threat of double jeopardy. The Tennessee [distribution] convictions and the Kentucky possession with intent to distribute convictions (counts 2 through 9 and 11) clearly involve distinctive transactions and conduct which are all violative of federal laws. Therefore, the Kentucky convictions for possession with intent to distribute do not pose any threat to the Defendant's privilege against double jeopardy.

(J.A. at 171-72.)

Lastly, we note that Petitioner's CCE conviction in the Eastern District of Kentucky following his Tennessee conviction on cocaine distribution charges, did not violate double jeopardy principles, even if his cocaine sales to Bobby Freeman were part of the wide-ranging conspiracy alleged in

Counts 1 and 13 of the Kentucky indictment. "A substantive crime and a conspiracy to commit that crime are not the 'same offense' for purposes of double jeopardy, even if based upon the same underlying indictments, 'because the essence of a conspiracy offense is in the agreement or confederation to commit a crime.'" *United States v. Medina*, 992 F.2d 573, 588 (6th Cir. 1993) (quoting *United States v. Felix*, 503 U.S. 378, 389-90 (1992)). In *Felix*, the Supreme Court held that the defendant's conspiracy conviction did not violate his double jeopardy rights even though he had already been prosecuted for two of the predicate acts supporting the conspiracy charge. *Felix*, 503 U.S. at 391-92.

We believe the same holds true here. Since Petitioner's CCE conviction required proof of various elements entirely absent from the cocaine distribution offenses alleged in the Eastern District of Tennessee indictment, there is no double jeopardy violation. *See Garrett v. United States*, 471 U.S. 773, 779 (1985) (stating that "Congress intended the CCE provision to be a separate criminal offense which was punishable in addition to, and not as a substitute for, the predicate offenses"); *United States v. Smith,* 963 F.2d 892, 894 (6th Cir. 1992) (holding that the defendant's conviction on a marijuana charge did not violate double jeopardy principles, even though that charge had been one of the predicate acts identified under the CCE charge of which he had previously been convicted). Accordingly, the district court properly denied Petitioner's § 2255 motion upon finding that his double jeopardy rights were not violated by his CCE and cocaine possession with intent to distribute convictions in Kentucky following his conviction on two cocaine distribution counts in Tennessee.

## II.   Severance from co-defendant Kenneth Lawson for purposes of trial.

Petitioner contends that the district court's refusal to grant his motion to sever Lawson's case rendered his trial

fundamentally unfair because he was prejudiced by Lawson's absence. We disagree.[1]

This Court rejected the same argument on direct appeal when it was raised by co-defendant Diane Whited, and instead concluded that the district court did not abuse its discretion in denying the severance motion:

In the instant case, a large portion of the evidence presented, including that related to Lawson, was applicable to each defendant to show the scope of the charged conspiracy. While Lawson was not there to "challenge" his alleged participation at trial, his co-defendants had the opportunity to convince the jury that they were not associated with him.

The fact that a defendant sought to escape prosecution is usually relevant in establishing culpability, so we understand Whited's anxiety about "transferred guilt" due to Lawson's flight. However, the district court neutralized any adversity Lawson may have caused his co-defendants by his actions. It gave a cautionary

---

[1] Before moving to the merits, we note that Petitioner's argument may be procedurally barred. Petitioner did not raise this claim in his initial § 2255 motion. Rather, it was first raised in his supplemental objections to the magistrate judge's final Report and Recommendation. The magistrate thus never had the opportunity to consider this issue. Courts have held that while the Magistrate Judge Act, 28 U.S.C. § 631 *et seq.*, permits *de novo* review by the district court if timely objections are filed, absent compelling reasons, it does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate. *See United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998) (citing *Marshall v. Chater*, 75 F.3d 1421, 1426-27 (10th Cir. 1996) ("issues raised for the first time in objections to magistrate judge's report and recommendation are deemed waived")); *see also Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994); *Paterson-Leitch Co., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988); *Anna Ready Mix, Inc. v. N.E. Pierson Constr. Co., Inc.*, 747 F. Supp. 1299, 1302-03 (S.D. Ill. 1990). Hence, Petitioner's failure to raise this claim before the magistrate constitutes waiver. Nonetheless, Petitioner's claim fails on the merits.