NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0545n.06
Filed: August 7, 2007

No. 06-1645

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| CONTRELL SMITH, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: KENNEDY, GIBBONS and McKEAGUE, Circuit Judges.

JULIA SMITH GIBBONS, Circuit Judge. Defendant-appellant Contrell Smith appeals his conviction on one count of engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848, four counts of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1), and four counts of unlawful use of a communication facility in violation of 21 U.S.C. § 843(b). Smith argues that: (1) there was insufficient evidence to support his conviction for engaging in a continuing criminal enterprise; (2) there was insufficient evidence to support one of his convictions for possession with intent to distribute a controlled substance; (3) the district court erred in its instruction to the jury regarding the continuing criminal enterprise count; (4) the continuing criminal enterprise statute is unconstitutionally vague as applied to him; and (5) there was prosecutorial misconduct at the trial. Smith does not appeal his sentence. For the following reasons,

-1-

we affirm Smith's conviction.

I.

The "Joy Boys" organization sold and delivered crack and powder cocaine to customers who called the "customer service" telephone numbers. Members of the Joy Boys organization worked in eight hour shifts, twenty-four hours a day, driving the delivery car and operating the customer service telephone. On the slowest sales shift, from 2:00 A.M. to 10:00 A.M., the organization averaged about 1,500 sales a month. A limited amount of drugs was kept in the delivery car, so the car had to be reloaded three or four times per shift. From October 2002 to December 7, 2003, an undercover government agent made thirty-seven drug purchases from thirteen different members of the organization.

After the government executed a search warrant at a townhouse leased by Smith and used as a resupply location, workers began to meet Smith at a Residence Inn across the street for resupply. The government determined that Room 1113 of the Residence Inn was being used and obtained a warrant to search that room. On the day of the search, Smith was the registered guest of Room 1113, and although not physically seen in the room, Smith was seen many times entering and exiting the hotel courtyard near Room 1113. While searching the room, government agents noticed that the pins were partially raised out of the hinges of an otherwise-locked maintenance closet located inside of Room 1113. By raising the pins further and removing them from the hinges, the agents were able to remove the door to the closet. Inside the closet, the agents discovered a large quantity of cocaine. When agents eventually searched Smith's residence, they recovered three cocaine kilogram wrappers, which contained cocaine residue.

The Joy Boys organization obtained an estimated $15 million in gross receipts during the

fifteen months of operation. A financial analysis by the government revealed that Smith had legitimate income of no more than $13,000 from employment and $28,000 from a recording business, although some evidence suggested that the recording business was a front company for Smith's drug operation. At that same time, Smith accumulated approximately $135,000 in expenditures and savings. Drug-related evidence seized from Smith's residence indicated that he may have possessed cocaine worth approximately $60,000. Based on this evidence, a government witness opined that Smith's net income from his drug organization was "hundreds of thousands of dollars."

In a post-arrest statement, Smith admitted that he was "running the organization," along with two other individuals, Cornell Smith and Arvie Quinn. This statement was corroborated by the testimony of a coconspirator, Kelly Dawe. Among his responsibilities, the record indicates that Smith provided members, such as Khalid Ashburn, with authorization to give a discount on some crack cocaine to a customer. Smith also instructed Larry Brooks to transfer the number of the customer service telephone to another cell phone when Brooks sought assistance after the previous cell phone was confiscated by the police.

Smith was indicted with thirteen other defendants on various drug charges, but Smith was the only defendant who elected to go to trial. At a jury trial, Smith was convicted on all ten counts charged, including conspiracy to distribute cocaine and cocaine base, conducting a continuing criminal enterprise, four counts of possession with intent to distribute cocaine or cocaine base, and four counts of unlawful use of a communication facility. One of the counts of possession with intent to distribute cocaine or cocaine base involved the drugs recovered from the maintenance closet of the Residence Inn.

## II.

Smith challenges the sufficiency of the evidence supporting his conviction for engaging in a continuing criminal enterprise and supporting his conviction for possession with intent to distribute the cocaine seized from the maintenance closet in Room 1113 of the Residence Inn. The usual standard of review for an insufficiency of the evidence claim is whether "after viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt." *United States v. Beddow*, 957 F.2d 1330, 1334 (6th Cir. 1992). However, where as here, the defendant fails to move for judgment of acquittal pursuant to Fed. R. Crim. P. 29, appellate review is limited to determining whether there was a "manifest miscarriage of justice" because the "record is devoid of evidence pointing to guilt." *United States v. Abdullah*, 162 F.3d 897, 903 (6th Cir. 1998) (internal quotation marks omitted).

## A.

The elements of a violation of § 848 are: (1) the defendant committed a felony violation of federal narcotics laws; (2) the violation was part of a continuing series of three or more drug offenses committed by the defendant; (3) the defendant committed the series of offenses in concert with five or more persons; (4) the defendant acted as an organizer, supervisor, or manager with regard to these five or more persons; and (5) the defendant obtained substantial income or resources from this series of violations. *United States v. Burns*, 298 F.3d 523, 535 (6th Cir. 2002). The relationship requirement is flexible: the defendant's relationship with the five other individuals need not exist at the same moment, and the defendant need not have had personal contact with the individuals as long as there is evidence they were under his control. *United States v. Long*, 190 F.3d 471, 475 (6th Cir. 1999).

Smith argues that there was insufficient evidence to establish a that he acted as an organizer, supervisor, or manager with regard to five persons in the enterprise. In a post-arrest statement, Smith admitted that he was "running the organization" along with two other individuals, Cornell Smith and Arvie Quinn. This statement was corroborated by the testimony of Kelly Dawe, an unindicted coconspirator. The Joy Boys organization employed at least thirteen individuals other than the managers. Smith challenges this evidence by pointing out that evidence from a confidential informant indicated that Cornell Smith and Arvie Quinn "were the main guys," without mention of the defendant. However, this is a challenge to the weight of the evidence or the credibility of the witnesses, which the court does not consider in assessing the sufficiency of the evidence. *United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006.) Furthermore, Smith concedes that there is evidence of his supervisory role over Kelly Dawe, Herman Burch, Arvie Quinn, and Eddie Hubbert. The record indicates that Smith called Khalid Ashburn to authorize him to give a discount on some crack cocaine to a customer. Smith also was called by Larry Brooks, who sought help dealing with the confiscation of a cell phone by the police, which Smith did by instructing Brooks to transfer the number to a new cell phone. From this evidence it is possible to conclude that Smith acted as an organizer, supervisor, or manager with regard to five or more persons in the enterprise. Therefore, the record is not "devoid of evidence" that Smith engaged in a continuing criminal enterprise, and his claim of insufficient evidence fails.

B.

The elements of a violation of § 841(a) are: (1) the defendant knowingly (2) possessed a controlled substance (3) with intent to distribute. *United States v. Jackson*, 55 F.3d 1219, 1225 (6th Cir. 1995). Evidence of constructive possession is sufficient to sustain a verdict. *United States v.*

*Hill*, 142 F.3d 305, 312 (6th Cir. 1998). "To establish constructive possession, the evidence must indicate ownership, dominion, or control over the contraband itself or the premises or vehicle in which the contraband is concealed." *United States v. White*, 932 F.2d 588, 589 (6th Cir. 1991) (internal quotation marks omitted). The government need not demonstrate exclusive possession. *United States v. Gibbs*, 182 F.3d 408, 425 (6th Cir. 1999). "Physical proximity to drugs, or mere presence in an area where drugs are found, is not sufficient." *White*, 932 F.2d at 589.

Smith argues that there was no evidence that he was seen in the room or that he had access to the locked maintenance closet in the room where the cocaine was found. Dawe testified that Smith had resupplied him with cocaine from the Residence Inn. Smith was the registered guest of Room 1113, and although not physically seen in the room, Smith was seen many times entering and exiting the hotel courtyard near it. The maintenance closet was inside Room 1113, and while it was technically locked, the evidence indicates that an occupant of Room 1113 had previously removed the pins from the door hinges, allowing the closet to be opened. It is possible to conclude from this evidence that Smith controlled the cocaine found in a closet that he could open in a room that he had rented and frequently visited. Therefore, the record is not "devoid of evidence" that Smith constructively possessed the cocaine, and his claim of insufficient evidence fails.

### III.

Smith challenges the instruction given by the district court to the jury on his charge of engaging in a continuing criminal enterprise because it did not "require[] jury unanimity in respect to each individual 'violation'" constituting the continuing series. *See Richardson v. United States*, 526 U.S. 813, 824 (1999). Here, the instructions only required the jury to find "a continuing series of three or more related violations of the federal drug laws," and the jury used a verdict form that

only allowed for a general verdict on the charge of engaging in a continuing criminal enterprise. However, even if these instructions failed to satisfy the requirements of *Richardson*, the conviction may be affirmed if the error is harmless. *See Murr v. United States*, 200 F.3d 895, 906 (6th Cir. 2000).

Where the jury convicts the defendant on three or more charges alleged to be predicate violations supporting the continuing criminal enterprise charge, and the evidence presented clearly establishes that the violations are related to one another, a failure to instruct the jury that it must unanimously agree about which violations constitute the continuing series is harmless. *See Murr*, 200 F.3d at 906-07. Here, the indictment charged Smith with engaging in a continuing criminal enterprise by committing three or more of the other offenses charged in the indictment. The jury unanimously agreed to convict Smith on every charge. All of the other charges are qualifying predicate offenses of a continuing criminal enterprise. *See United States v. Zavala*, 839 F.2d 523, 527 (9th Cir. 1988) (unlawful use of a communication facility); *United States v. Davis*, 809 F.2d 1194, 1203 (6th Cir. 1987) (possession with intent to distribute); *United States v. Schuster*, 769 F.2d 337, 345 (6th Cir. 1985) (conspiracy). Therefore, there is no concern that the jurors may have convicted Smith on the basis of violations for which there was not unanimous agreement. *See Murr*, 200 F.3d at 906. Furthermore, because the government presented substantial evidence that these violations were committed as part of the Joy Boys operation, the accuracy of which Smith does not contest on appeal, "no rational jury could unanimously find [the defendant] guilty of the underlying predicate offenses without also unanimously finding that they were related to each other." *Id.* at 907 (quoting *United States v. King*, 169 F.3d 1035, 1041 (6th Cir. 1999)). Accordingly, any error in the district court's failure to instruct the jury that it must unanimously agree about which violations

constitute the continuing series is harmless.

IV.

Smith also argues that the "substantial income or resources" requirement of the continuing criminal enterprise statute is unconstitutionally vague as applied to him because the term is not adequately defined. Because Smith failed to raise this issue before the trial court, his vagueness claim is subject to plain error review. *See United States v. Olano*, 507 U.S. 725, 731 (1993). To the extent that Smith claims that there was insufficient evidence to satisfy the "substantial income or resources" requirement, review again is limited to determining whether there was a "manifest miscarriage of justice" because the "record is devoid of evidence pointing to guilt." *Abdullah*, 162 F.3d at 903 (internal quotation marks omitted).

This court has previously rejected a facial vagueness challenge to the continuing criminal enterprise statute, *United States v. Collier*, 493 F.2d 327, 329 (6th Cir. 1974), and the statute is no more vague as applied to Smith. In this case, the government presented evidence that during the course of the criminal enterprise, Smith had legitimate income of no more than $41,000 from employment and a recording business. However, the government presented evidence that the recording business was not legitimate but rather a front company for Smith's drug operation, casting doubt on $28,000 of his income. At that same time, Smith accumulated approximately $135,000 in expenditures and savings. Furthermore, the drug-related evidence seized from Smith's residence indicated that he may have possessed cocaine valued at approximately $60,000. Based on this evidence, the government witness opined that Smith obtained "hundreds of thousands of dollars" from the criminal enterprise. The record is not "devoid of evidence" and indicates that Smith received an amount of money that would satisfy any definition of "substantial," particularly in light

of Smith's modest legitimate income. Therefore, the statute is not unconstitutionally vague as applied to Smith, and there is sufficient evidence that Smith obtained substantial income or resources from his criminal enterprise.

## V.

Finally, Smith argues that his trial was fundamentally unfair because of prosecutorial misconduct. Because Smith failed to object to any of the alleged misconduct below, the court reviews only for plain error. *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006). Smith presents a laundry list of complaints that he casts under the umbrella of prosecutorial misconduct. Some of these complaints lack any factual or legal basis; others lack any evidence that they affected Smith's substantial rights; and still others involve conduct by individuals other than the prosecutor, including his own attorney. None of them, however, constitute plain error.

## VI.

For the foregoing reasons, we affirm Smith's conviction.