Not Recommended for Publication
File Name:  11a0886n.06

**FILED**

***Dec 29, 2011***

LEONARD GREEN, Clerk

**Nos. 07-1191 and 07-1310**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| JAMES JACKSON, | ) | THE EASTERN DISTRICT OF |
| | ) | MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL ANTHONY CLARK, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  BATCHELDER, Chief Judge; SILER and COLE, Circuit Judges.

**SILER**, Circuit Judge. Defendants Michael Clark and James Sigmund Jackson appeal separately from criminal convictions in the same case.  We affirm the district court on all but two issues.  As to Clark's double-jeopardy and procedural-unreasonableness-in -sentencing challenges, we agree with Clark, vacate his sentence, and remand for resentencing. We also vacate Jackson's sentence and remand for resentencing.

# I.

The indictment named both defendants, plus other co-defendants who elected to plead guilty rather than go to trial, in multiple counts. Clark faced two counts of conspiracy to possess with intent to distribute and to distribute controlled substances (Count One for marijuana, Count Two for cocaine); a continuing criminal enterprise count (Count Four); seven counts of unlawful use of communication facilities to conspire to possess with intent to distribute controlled substances (Counts Five, Six, Seven, Nine, Eleven, Thirteen, and Thirty Three); one count of conspiracy to launder monetary instruments (Count Thirty Five); one count of laundering monetary instruments (Count Thirty Six); two counts of felon in possession of a firearm (Counts Forty One and Forty Two); and two criminal forfeiture counts (Counts Forty Three and Forty Four). Jackson faced one count of conspiracy to possess with intent to distribute marijuana (Count One) and two counts of unlawful use of communication facilities to conspire to possess with intent to distribute controlled substances (Counts Nine and Ten).

The jury found Clark guilty of Counts One, Two, Four, Five, Seven, Eleven, Thirteen, Thirty Three, Forty One, and Forty Two of the indictment, but acquitted him on the other counts. The district court sentenced Clark to the following terms of imprisonment, all to run concurrently: 480 months on Count One, 600 months on Counts Two and Four, 48 months on each of Counts Five, Seven, Eleven, Thirteen, and Thirty Three; and 120 months on Counts Forty One and Forty Two.

The jury found Jackson guilty on Count One of the indictment and acquitted him on Counts Nine and Ten. The district court sentenced Jackson to 180 months of imprisonment.

## II.

## A.

First, Clark contends that the district court erred in denying his motion to suppress evidence obtained from a Title III wiretap, where the motion alleged that the wiretap affidavit failed to demonstrate probable cause and necessity under 18 U.S.C. § 2518.

When reviewing a district court's ruling on a motion to suppress a wiretap, we consider factual determinations under the clearly erroneous standard. *United States v. Gray*, 521 F.3d 514, 524 (6th Cir. 2008) (citing *United States v. Rice*, 478 F.3d 704, 709 (6th Cir. 2007)). Questions of law receive de novo review. *Id.*

The district court properly denied Clark's motions to suppress, finding both probable cause and necessity. Under 18 U.S.C. § 2518, a judge may properly enter an ex parte order approving a wiretap

> if the judge determines on the basis of facts submitted by the applicant that--
>
> > (a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;
> >
> > (b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;
> >
> > (c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous .
> > . . .

18 U.S.C. § 2518(3); *see United States v. Poulsen*, No. 08-4218, 09-3658, 2011 WL 3715115, at *6 (6th Cir. Aug. 25, 2011) (slip copy) (outlining requirements).

- 3 -

First, the district court appropriately denied the motions to suppress because the applications established probable cause. A reviewing court assesses the application "on the totality of the circumstances and in a reasonable and common sense manner." *United States v. Alfano*, 838 F.2d 158, 162 (6th Cir. 1988) (noting that "[t]he basic standards for a wiretap are similar to those for a search warrant") (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). In an application involving an informant, the totality of the circumstances analysis includes "'the veracity and basis of knowledge of persons supplying hearsay information,'" *United States v. Williams*, 224 F.3d 530, 532 (6th Cir. 2000) (quoting *Gates*, 462 U.S. at 238) (internal quotations omitted), and the issuing judge must be "reasonably assured that the informant was credible and the information reliable." *Id.* A reviewing court affords "great deference" to the issuing judge's determination of the circumstances at the time of issuance. *Alfano*, 838 F.2d at 162.

The district court properly found probable cause based on the initial wiretap application, as well as the twelve related or supplemental wiretap applications. Because the twelve subsequent applications rely on similar grounds to the first application, Clark focuses his challenge on that first application, contending that the issuing judge improperly credited information from informants and valued bare conclusory allegations with no requisite factual support.

Contrary to Clark's contentions, the first application properly relied on information from informants. Each of the informants had been cooperating for a year or more. The agent's affidavit details investigatory history with each informant not just in the introductory sections for the informants, but also throughout the remainder of the affidavit. Crediting the information where appropriate, while considering the limitations of each informant, the district court properly found that the informants provided sufficiently reliable information toward establishing probable cause.

Clark also objects that the application provided no source of information for facts asserted and drew conclusions irreconcilable with the facts included within the four corners, but these contentions, likewise, lack merit. As to the source of information, the agent expressly states that he personally participated in the investigation and also included "information provided by DEA and FBI Agents and local police officers in Michigan and elsewhere." The affidavit recounts specific surveillance operations, interviews, and monitored telephone conversations from the ongoing investigation. Where the application needs to show probable cause, not establish guilt, the source information provided stands as appropriate and sufficient.

Likewise, Clark's argument concerning conclusions drawn in the agent's affidavit merits no relief. While the agent provided the specific investigative background noted above, the agent also described his own training and experience and asserted those to provide him with additional basis for drawing conclusions. Of course, such training and experience do not afford an officer *carte blanche* to speculate in any investigation, but instead, the training and experience fold into the overall evaluation of probable cause, as weighed by the issuing judge.

The district court also properly denied the motion to suppress because the application met the necessity requirement. To demonstrate necessity, an application for the wiretap authorization must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *United States v. Rice*, 478 F.3d 704, 709-10 (6th Cir. 2007) (internal quotation omitted). The applicant's burden "is not a heavy one." *Id.* To meet the requirement, "investigators [must] give serious consideration to the non-wiretap techniques prior to applying for wiretap authority . . . ." *United States v. Lambert*, 771 F.2d 83, 91 (6th Cir. 1985). The purpose is "to ensure that a

wiretap 'is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.'" *Alfano*, 838 F.2d at 163 (quoting *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974)). However, applicants need not "'prove that every other conceivable method has been tried and failed.'" *Poulsen*, 2011 WL 3715115, at *6 (quoting *Alfano*, 838 F.2d at 163).

Here, the agent provided a thorough description of his consideration of other investigative techniques, including reporting limited successes where efforts to pursue those techniques had been attempted. The applying Assistant United States Attorney also affirmed that other investigative techniques had been attempted or would be unlikely to find success.

As to necessity, Clark also contends that each renewal or related application results in an increasing burden for the Government to show necessity, but this argument, even if correct, results in no relief for Clark here. Each application submitted, on its own merits, makes a sufficient showing of necessity, based on the original agent's affidavit and additional context about development of the investigation. Clark attempts to restrict the evaluation solely to the section addressing alternate means of investigation, arguing that language not to be updated appropriately, but the proper analysis considers each application in its entirety, not just a single section of the application. Here, each application provides a discussion of prior applications and an update on the status of the overall investigation, as relative to that particular application, and these sections no doubt assisted the issuing judge in evaluating necessity each time. The district court properly denied the motions to suppress evidence from the wiretaps.

**B.**

Clark also argues that the district court erred in denying his motion to suppress evidence seized from his residence and vehicles, where the motion asserted that the search warrant affidavit

failed properly to establish probable cause and officers could not have relied on the warrant in good faith.

Reviewing the district court's ruling on a motion to suppress evidence from a search, we evaluate factual determinations under the clearly erroneous standard and conclusions of law under the de novo standard. *United States v. Gillman*, No. 09-6109, 2011 WL 3288417, at *1 (6th Cir. Aug. 2, 2011) (slip copy) (citing *United States v. Gross*, 550 F.3d 578, 582 (6th Cir. 2008)).

The affidavit has some basic flaws. Assuming without deciding that it lacks probable cause, nevertheless the good-faith exception to the exclusionary rule applies here. Under *United States v. Leon*, 468 U.S. 897 (1984), the exclusionary rule does not bar evidence seized in reasonable, good-faith reliance on a search warrant subsequently determined to be invalid. *Id.* at 922-23; *United States v. Leake*, 998 F.2d 1359, 1366 (6th Cir. 1993). A reviewing court, therefore, must determine whether the supporting affidavit was "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'" *Leon*, 468 U.S. at 923 (quoting *Brown v. Illinois*, 422 U.S. 590, 611 (1975) (Powell, J., concurring)). In four situations, the good-faith exception does not apply: (1) where the affiant provided false information to the issuing judge and knew or should have known about the falsity; (2) "where the issuing magistrate wholly abandoned his judicial role"; (3) where the supporting affidavit is devoid of "indicia of probable cause"; and (4) where the warrant is "so facially deficient" that the "executing officers cannot reasonably presume it to be valid." *Id*.

Clark argues that the first and third *Leon* exceptions should apply in this matter, but neither carries the day. No evidence suggests that the affiant provided false information, so while the criminal history, as presented, appears unrelated and wholly tangential, the lack of falsity takes this case outside of the first exception. As to the third exception, the affidavit has some factual

development -- the wiretap conversation excerpt and surveillance of duffel bags, for instance -- and that development means the affidavit should not be regarded, as Clark would contend, as "bare bones." What brings the search under *Leon* amounts to the inferences that can be drawn to establish identity and nexus. The affidavit noted a wiretap authorization that had been issued for a telephone number associated with Clark and reported conversations as involving him, and in this circumstance, a reasonable officer could in good faith have believed the identity of Clark to be established by inference. That is, an officer could credibly have assumed that the implied success of the wiretap authorization demonstrated identity. Moreover, such an officer could have believed in good faith that the reported surveillance at Clark's residence and involving his vehicles showed a sufficient nexus, based on prior investigative activity. The prior action and factual development provide minimally sufficient indicia of probable cause to bring the search to a safe haven under the *Leon* exception.

## C.

Clark next contends that the district court abused its discretion by denying his motion for a mistrial. When reviewing denial of a motion for mistrial based on alleged prosecutorial misconduct, we apply the abuse of discretion standard. *United States v. Hopper*, No. 09-6234, 2011 WL 2119132, at *12 (6th Cir. May 31, 2011) (slip copy) (citing *United States v. Wettstain*, 618 F.3d 577, 588 (6th Cir. 2010)). We follow a two-step analysis and determine (1) whether the prosecutor's remarks were improper; and, if so, (2) whether those remarks were flagrant. *United States v. Beasley*, 583 F.3d 384, 392-93 (6th Cir. 2009). The court reverses for improper non-flagrant prosecutorial misconduct only where (1) the proof against the defendant was not overwhelming; (2)

defense counsel objected to the conduct; and (3) the district court failed to give a curative instruction. *United States v. Brown*, 66 F.3d 124, 127 (6th Cir. 1995).

The district court appropriately denied the motion for mistrial, where the prosecutor solicited improper testimony at least once, but not flagrantly in the context of the entire trial, and strong evidence demonstrated Clark's guilt. At the end of the first day of trial, Clark stipulated to a prior felony conviction for the felon-in-possession counts, per *Old Chief v. United States*, 519 U.S. 172 (1997). Two days later, the prosecutor elicited improper testimony from a case agent concerning the specific crime:

> Q. Does he have a felony conviction?
>
> A. Yes, ma'am.
>
> Q. For what?
>
> A. Armed robbery.
>
> THE COURT: Just a moment. I thought there was a stipulation on this.
>
> MS. GIBBS: I thought there was an agreement that the evidence would come in.
>
> MR. STEINGOLD: May we approach?
>
> THE COURT: I don't think we need to. I understood, and correct me if I'm wrong, I understood that the defense for Mr. Clark was going to stipulate that there was, in fact, a felony conviction on his record. Is that correct, Mr. Steingold?
>
> MR. STEINGOLD: That is correct.
>
> THE COURT: Then that ends the inquiry.

At the time Clark entered his stipulation, the district court granted a motion to exclude mention of prior convictions related to Clark and Jackson.

The second incident, while still potentially problematic, does not implicate the same concerns. On the first day of trial, the district court ruled that, as to reputation evidence, he would have to hear "specific questions" and "specific objections" and thus could not make an in limine ruling in advance regarding all potential reputation testimony. A couple of weeks later, during the redirect examination of Kevin Youngblood, the prosecutor sought to delve into Clark's reputation for violence, and after an initial objection, the district court permitted the questioning to proceed. However, after the prosecutor asked about specific instances, Clark objected, and the district court upheld the objection. Later, the prosecutor asked Youngblood whether he had a contract on Clark's life. Youngblood responded that Clark had contracts on him and two other men, and Clark immediately objected. Counsel engaged in an extended argument that appeared to confuse the posture at that time, the district court's prior rulings on reputation evidence and 404(b) evidence, and a prior Rule 609 stipulation between Jackson and the United States. The district court ultimately sorted out the confusion and upheld the objection. As part of the rationale, the district court indicated that the jury, which had been out for lunch for over an hour, would not remember the question or answer. On that basis, the district court declined to give a curative instruction. However, it permitted Clark an opportunity to propose an instruction to be given later. By written motion incorporating all instances of alleged prosecutorial misconduct, Clark ultimately moved for mistrial, but the district court denied the motion, finding, as relevant to the second instance, that the instance did not rise to the level of prosecutorial misconduct.

Importantly, the incidents, even if both improper, were not flagrant. To assess flagrancy, the court examines (1) whether the statements tended to mislead the jury and prejudice the defendant; (2) whether the statements were isolated or extensive; (3) whether the statements were deliberately

placed before the jury; and (4) the overall strength of the evidence against the defendant. *United States v. Gonzalez*, 512 F.3d 285, 292 (6th Cir. 2008). The incidents, two out of a multiple-week, many-witness trial, were isolated, not extensive.

Regarding the first incident -- the one definitely and obviously improper -- the district court emphasized that the jury had already heard that Clark had a prior robbery conviction because that allegation appeared in the indictment, which had been read to the jury. Clark now contends the district court's rationale to be erroneous because the district court also instructed the jury that the indictment should not be considered as evidence, and juries are presumed to follow instructions. Of course, this same logic defeats Clark's current argument because, after all proof had been taken, the district court gave the jury an instruction that Clark had stipulated to a prior felony and any information about that felony otherwise does not relate to the instant matter:

> The parties have stipulated, as I indicated, and agreed that Michael Clark had a prior felony conviction. This evidence is admitted only for the purpose of establishing that element of the charged offense which requires proof of a prior felony conviction. It is not to be considered as evidence that Michael Clark has a propensity to commit crimes or for any other purpose.

That instruction, presumed to be followed, removed prejudice.

Clark argued the prosecutor's efforts to be deliberate, but the solicitation of improper testimony here was more careless and inattentive than deliberate, though nonetheless serious.

A key factor, the evidence against Clark stands as quite strong. For example, multiple witnesses, including co-defendants, testified that Clark supervised and participated in a multi-person drug network that brought marijuana and cocaine into Detroit using tractor-trailers, distributed the drugs, and collected money. The wiretaps turned up conversations specifically documenting Clark's activities with and in this organization. Officers intercepted one shipment of over 1000 pounds of

marijuana and overheard Clark, in an intercepted call just after the interception, lamenting that "all [his] weed" had been in the truck.

We find no basis for reversal. The prosecutor's careless and inattentive solicitation of improper testimony does not rise to the level of flagrancy, and in light of the strong evidence against Clark, reversal is not appropriate. The district court properly denied the motion for mistrial based on alleged prosecutorial misconduct.

**D.**

Clark asserts that, as to his continuing-criminal-enterprise (CCE) conviction, the evidence failed sufficiently to establish supervision of five or more criminally involved persons.

We review de novo the sufficiency of the evidence to sustain a conviction. *United States v. Lawson*, 535 F.3d 434, 443 (6th Cir. 2008) (citing *United States v. Gibson*, 896 F.2d 206, 209 (6th Cir. 1990)). Here, sufficient evidence supported Clark's CCE conviction. The following elements constitute the offense of CCE under 21 U.S.C. § 848:

> (1) that the defendant committed a felony violation of federal narcotics laws [21 U.S.C. §§ 801 et. seq.];
>
> (2) that the violation was part of a continuing series of three or more drug offenses committed by the defendant;
>
> (3) that the defendant committed the series of offenses in concert with five or more persons;
>
> (4) that the defendant acted as an organizer, supervisor, or manager with regard to these five or more persons; and
>
> (5) that the defendant obtained substantial income and resources from this series of violations.

*United States v. Avery*, 128 F.3d 966, 973 (6th Cir. 1997). Clark challenges only whether sufficient evidence existed as to the fourth element: organization, management, or supervision ("supervision") of five or more criminal participants. Specifically, he alleges that the evidence demonstrated supervision of only three participants: Charles Gadson, Cornell Lewis, and James Jackson.

Contrary to Clark's protests, the evidence sufficiently established organization, management, or supervision of five or more participants. Clark characterizes participants other than Gadson, Lewis, and Jackson to be simply buyers or sellers, distant sources of supply, or innocent dupes, all with no real indicia of control by Clark. In finding a defendant guilty of CCE,

> the jury need not unanimously agree on the identities of the five particular persons, nor need the five persons be named in the indictment or bill of particulars. A person can be found to be under the defendant's organization or supervision because she knew about the drug operation, took orders directly from the defendant and helped in the drug business. A broker or courier under the defendant's supervision, someone who stores drugs for the defendant, or one who collects or launders drug proceeds is also within the ambit of the statute.

*Avery*, 128 F.3d at 973 (internal citations omitted). Standing alone, a purchase of drugs from an alleged organizer does not establish the supervisor relationship. *United States v. Ward*, 37 F.3d 243, 247 (6th Cir. 1994). Likewise, simply fronting drugs does not demonstrate a supervisor relationship. *Id.* at 248. Innocent participants also do not count in the supervisor calculus. *Id.*

A rational trier of fact could have found, beyond a reasonable doubt, that Clark supervised five or more persons. Melvin Reed, Cornell Lewis, and Kevin Youngblood all testified that Clark supervised at least five participants in the drug organization. According to Reed's testimony, he collected money for Clark, and he sold whichever type of drug, cocaine or marijuana, that Clark and Lewis specified. Clark concedes Lewis's role, and consistent with that concession, Lewis testified that he sold drugs, including cocaine and marijuana, for Clark. Youngblood also testified that he

sold cocaine and marijuana for Clark and that people from Clark's car washes would help load marijuana from Clark's van into Youngblood's vehicle. Witnesses further testified about the involvement of an additional party, Gerald Allen, who delivered drugs and collected money for Clark.

**E.**

Next, Clark argues that entry of judgment against him for both CCE and underlying drug conspiracy charges (Counts One and Two) violated the protection against double jeopardy. We agree.

Here, the CCE count (Count Four) of the indictment expressly incorporated the drug conspiracies charged in Counts One and Two. The parties agree that the district court erred and that the drug conspiracy convictions should be vacated where this court upholds the CCE conviction. In this circumstance, the drug conspiracy convictions merged into the CCE conviction, and the conspiracy convictions must be vacated. *United States v. Avery*, 128 F.3d 966, 972 (6th Cir. 1997) (citing *United States v. Schuster*, 769 F.2d 337, 345 (6th Cir. 1985)). The district court's sentencing in violation of double jeopardy constitutes plain error, and we vacate Clark's drug conspiracy convictions (Counts One and Two).

**F.**

Clark contends that his felon-in-possession convictions violate the Ex Post Facto Clause by wrongfully applying a 1992 Michigan firearms-possession restriction for felons against him. We review de novo a district court's denial of a motion to dismiss an indictment on legal grounds. *United States v. Penney*, 576 F.3d 297, 303 (6th Cir. 2009) (citing *United States v. Crayton*, 357 F.3d 560, 564 (6th Cir. 2004)).

- 14 -

Clark's felon-in-possession convictions do not violate the Ex Post Facto Clause. Under that clause, "[n]o Bill of Attainder or ex post facto Law shall be passed." U.S. Const. art. I, § 9, cl. 3. The ex post facto prohibition ensures "'that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed.'" *United States v. Reese*, 71 F.3d 582, 585 (6th Cir. 1995) (quoting *Weaver v. Graham*, 450 U.S. 24, 28-29 (1981)). An ex post facto violation includes two elements: "(1) the law must apply to events occurring before its enactment, and (2) it must disadvantage the offender affected by it." *Id.* (citing *Miller v. Florida*, 482 U.S. 423, 430 (1987)).

Here, Clark's felon-in-possession convictions relied on a 1992 firearms-possession restriction applying to Clark because of a 1984 armed robbery conviction. However, any person "who has been convicted in any court, of a crime punishable by imprisonment for a term exceeding one year . . . [may not] ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or [] receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1). Nevertheless, where a felon's right to possess firearms has been restored, the underlying conviction may not serve as a basis for section 922(g) conviction. 18 U.S.C. § 921(a)(20).

When Clark was convicted in 1984, the firearms-possession restriction in effect, Michigan Compiled Laws § 28.422, required that he may not possess a pistol until eight years after release from incarceration. M.C.L. § 28.422(1) (West 1972). After eight years, a felon who met all qualifications could have applied to possess a pistol. *Id.* However, in 1992, the Michigan legislature passed Michigan Compiled Laws § 750.224f to provide a comprehensive statute addressing felons and firearms-possession rights. M.C.L. § 750.224f (West 2004). With this background, Clark

contends that the new comprehensive restriction should not be applied retroactively to his 1984 felony conviction, where he had been released from prison prior to the 1992 enactment and would have been eligible to apply to possess a pistol after the eight years.

As the district court correctly found, Clark's felon-in-possession convictions do not implicate ex post facto concerns. *People v. Tice*, 558 N.W.2d 245 (Mich. Ct. App. 1996), upon which the district court properly relied, provides analysis exactly on point. In *Tice*, a defendant challenged his state-law felon-in-possession conviction, arguing that, because the 1992 firearms-possession restriction had not been in effect when he had been convicted of the underlying felony, the conviction raised ex post facto concerns under both the United States and Michigan constitutions. *Id.* at 246. The Michigan Court of Appeals found that the felon-in-possession conviction punished "possession of a firearm at a time after enactment of the statute," rather than retroactively expanding punishment for a prior felony. *Id.* at 246-47. The same logic applies in this matter: Clark's felon-in-possession convictions punish his possession of firearms in 2005, after the Michigan legislature's enactment of the 1992 firearms-possession restriction. The two convictions do not punish Clark further for the underlying armed robbery felony.

Clark also argues that the 1992 restriction unconstitutionally broadens the class of firearms from "pistol," in the prior enactment, to a more general category. Notably, Count Forty One expressly relies on possession of pistols, so even if meritorious, this challenge would only apply to Count Forty Two, which concerned a rifle. Here again, Clark attempts to construct his felon-in-possession convictions retroactively, as tied to the underlying 1984 felony, but as *Tice* explained, such convictions concern possession of firearms in violation of the legislature's operative enactment

instead. For these reasons, we affirm the district court's denial of Clark's motion to dismiss the indictment.

**G.**

Clark asserts that the district court imposed a procedurally and substantively unreasonable sentence. Because the parties agree that the district court sentenced both Clark and Jackson in a procedurally unreasonable manner by failing to discuss the 18 U.S.C. § 3553(a) factors in the hearing, we vacate the sentences, and remand for further proceedings. We need not address the substantive reasonableness contention. This way, the district court will first hear and consider arguments by defendants at resentencing.

**H.**

Clark also argues that his sentence violates due process. However, Clark waived this issue. It is "well-established" that "'issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.'" *Dillery v. City of Sandusky*, 398 F.3d 562, 569 (6th Cir. 2005) (quoting *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999)) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)). Here, as part of an argument section focused on the substantive and procedural reasonableness of Clark's sentence, he names the due process issue and cites the applicable standard of review, but never makes any argument or spends any time developing the issue. He offers one sentence articulating a due-process right part of the way through his sentencing reasonableness argument, but never any focused or meaningful discussion of the due process contention. Accordingly, Clark waived the due process challenge.

**I.**

Jackson argues that the district court abused its discretion by denying his request under Federal Rule of Evidence 804 to introduce allegedly exculpatory excerpts from a co-defendant's proffer statement into evidence.

The court reviews a district court's evidentiary rulings for abuse of discretion. *United States v. Gibson*, 409 F.3d 325, 337 (6th Cir. 2005). Jackson has not shown that the district court abused its discretion by denying his effort to admit statements from the voluntary proffer interview of a co-defendant. Federal Rule of Evidence 804(b)(3) permits the hearsay statements of an unavailable declarant to be admitted when the statements, "from the perspective of the average, reasonable person," stand adverse to the declarant's penal interest and corroborating circumstances "truly establish the trustworthiness of the statement." Fed R. Evid. 804(b)(3); *United States v. Johnson*, 581 F.3d 320, 326-27 (6th Cir. 2009) (citing *United States v. Tocco*, 200 F.3d 401, 414 (6th Cir. 2000)). The district court determined that the co-defendant offered the statements under a *Kastigar* agreement, which precluded direct use of the statements against the co-defendant by authorities, and that because the co-defendant sought to gain favor with authorities, the statements lacked trustworthiness.

First, Jackson has not shown that the district court abused its discretion in determining that the co-defendant's voluntary proffer statements, under a *Kastigar* agreement that provided direct-use immunity, but not derivative-use immunity, had not been made against interest. Under the Fifth Amendment, a witness who is compelled to testify must be granted "[i]mmunity from the use of [that] testimony, as well as evidence derived directly and indirectly therefrom." *Kastigar v. United States*, 406 U.S. 441, 453 (1972). When a defendant voluntarily provides information to the

government, however, the Fifth Amendment is not implicated, and the government may negotiate a lesser degree of immunity. *See, e.g.*, *United States v. Harper*, 643 F.3d 135, 140 n.1 (5th Cir. 2011); *United States v. Mendizabal*, 214 F. App'x 496, 501 (6th Cir. 2006) (addressing an agreement that offered only "pocket immunity").

As a preliminary matter, Jackson attempts to wrench inartful responses by the prosecutor out of context to argue -- for the first time -- that no immunity agreement, as part of the *Kastigar* agreement, existed between the co-defendant and prosecutor. However, the full motion argument exchange before the district court leaves no doubt that both parties acknowledged the co-defendant's *Kastigar* proffer could not be used directly against him in a criminal prosecution. Jackson correctly notes that the *Kastigar* agreement has not been entered into the record, but given that both sides previously agreed that one had been entered and even discussed the terms, Jackson's current attempt to contend the agreement afforded no form of immunity stands, at best, as ill-advised.

The district court reviewed the filings by the parties, heard argument, made sure to identify and consider the specific proffer interview at issue and its circumstances, and reached a reasoned decision. Notably, the materials submitted with Jackson's motion in limine seeking admission of proffer statements are Drug Enforcement Agency (DEA) summaries of the co-defendant's statements, not the statements themselves. The language of the motion, and accompanying presentation at oral argument, suggests an effort to introduce particular statements, but the proffer interview transcript does not appear in the record. To the extent Jackson moved simply to introduce the DEA summaries, terming them somehow as the co-defendant's statements, those instead reflect double hearsay: the co-defendant's original interview statements and the DEA agent's summaries

of those statements as the two levels of hearsay. Jackson discussed no other basis for admitting the first level of hearsay.

The parties agree -- the prosecutor definitively, and Jackson as an alternative argument to his contention that no agreement existed -- that the operative *Kastigar* agreement provided direct-use immunity, but not derivative-use immunity, for truthful statements. Where a defendant derives benefit from truthful statements, specifically avoidance of direct criminal prosecution, those statements rather obviously operate *in* his interest, rather than *against* his interest. The district court based its decision on this basic logic, finding that "[p]rovided Bennally told the truth, his statements could not be used against him, and thus could not be used to subject him to criminal liability." To the extent Jackson sought to admit the DEA summaries under Rule 804(b)(3), those would obviously not qualify because, as to the first level of hearsay, the declarant (the DEA agent) had no interest at stake in summarizing the co-defendant's interview statements.

Regarding the second level of hearsay -- the interview statements themselves -- we cannot find, on these facts, that the district court abused its discretion in not finding possible derivative-use prosecution to be sufficient. "[W]hether a statement is self-inculpatory or not can only be determined by viewing it in context." *Williamson v. United States*, 512 U.S. 594, 603 (1994). Statements must be evaluated on their own: "[t]he district court may not just assume . . . that a statement is self-inculpatory because it is part of a fuller confession, and this is especially true when the statement implicates someone else." *Id.* at 601. The declarant must appreciate the statement's self-inculpatory character when offering the statement. *Chambers v. Mississippi*, 410 U.S. 284, 299 (1973). Here, without the specific statements at issue available, no evidence suggests the co-defendant would have known with any certainty that he would be inculpating himself and subjecting

- 20 -

himself to prosecution. He offered the proffer as part of seeking a plea agreement with the prosecution, and all parties agree that, under the operative *Kastigar* letter, the co-defendant knew that his statements could not be used directly in any prosecution against him, as long as he told the truth. Jackson's challenge is meritless.

As to the trustworthiness of the proffer statement -- the second basis for the district court's finding that the co-defendant's statement would be inadmissible -- Jackson has not shown that the district court abused its discretion. The trustworthiness analysis concerns "not . . . 'whether other evidence in the case corroborates what the statement asserts, but rather on whether there are corroborating circumstances which clearly indicate the trustworthiness of the statement itself.'" *Johnson*, 581 F.3d at 327 (quoting *United States v. Franklin*, 415 F.3d 537, 547 (6th Cir. 2005)). The district court ultimately concluded that, because the co-defendant sought to curry favor with the prosecutor and enter a plea agreement, the statements lacked trustworthiness. Jackson suggests that the co-defendant's incentive to tell the truth and lack of a relationship with Jackson and other corroborating evidence in the record together mean that the district court should have admitted the statements at issue. However, those factors would not control in all circumstances, and Jackson has not submitted the statements at issue.

**J.**

Jackson asserts that the district court plainly erred by admitting Exhibit 90, an exhibit that he contends to be a summary exhibit. The court reviews a district court's evidentiary rulings for abuse of discretion. *Gibson*, 409 F.3d at 337. However, if defense counsel failed to object at trial, the court reviews for plain error. *United States v. Lopez-Medina*, 461 F.3d 724, 746 (6th Cir. 2006).

The plain-error standard of review applies. Prior to trial, Jackson moved in limine to exclude frequency reports under Federal Rule of Evidence 1006 because the Government had not provided the underlying data. However, at that time, only five purported frequency exhibits stood at issue, and Exhibit 90 was not one of those. The district court denied the motion, subject to cross-examination. Later, when the United States offered Exhibit 90 into evidence, Jackson made no contemporaneous objection or reference to his prior motion in limine concerning frequency reports. Testimony by the witness had just explicitly differentiated Exhibit 90 from frequency reports, so the district court had no way of knowing Jackson perceived a problem. Where Jackson did not bring his concern to the district court's attention, that court accordingly never had an opportunity to assess the contentions. Jackson now asserts that his original motion in limine, denied before trial, preserved the issue.

Here, the district court did not plainly err in admitting Exhibit 90. Despite Jackson's protests, Exhibit 90 does not constitute summary evidence. That exhibit -- a forty-four-page call database -- instead provides raw data, reported by the agents compiling the various reports. As the testifying agent explained, "[t]he call database will list date, time, duration, and the number dialed, subscriber name for each day that the request is made." Had the United States sought to introduce a summary of the call database, then the government would potentially have been required to produce the database for Jackson.

**K.**

Finally, Jackson argues that insufficient evidence supported his conspiracy conviction.

Because Jackson failed to move for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, we only look for "manifest miscarriage of justice" because the "record is

devoid of evidence pointing to guilt." *United States v. Smith*, 239 F. App'x 157, 159 (6th Cir. 2007) (quoting *United States v. Abdullah*, 162 F.3d 897, 903 (6th Cir. 1998) (internal quotation marks omitted)).

No manifest miscarriage of justice occurred when the jury found Jackson guilty of conspiracy to possess marijuana with the intent to distribute. To prove participation in a drug conspiracy in violation of 21 U.S.C. § 846, the government must establish "(1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy." *United States v. Welch*, 97 F.3d 142, 148 (6th Cir. 1996) (citing *United States v. Sanchez*, 928 F.2d 1450, 1457 (6th Cir. 1991)).

Jackson represented Clark in meeting marijuana deliveries, providing payment, and taking possession of the deliveries. Officers observed Jackson's attempted participation when Jackson met a truck carrying more than 1000 pounds of marijuana and directed the truck to a second location before fleeing when he perceived law enforcement surveillance. Numerous calls took place between Jackson and Clark before and after that attempted delivery. This evidence demonstrates that no manifest miscarriage of justice occurred when the jury found Jackson guilty.

**III.**

The convictions on all counts excepts Counts One and Two for Clark are AFFIRMED for Clark and Jackson. Counts One and Two are VACATED against Clark only. The remainder of the convictions for Clark and Jackson are REMANDED to the district court for resentencing.