**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 06a0915n.06
Filed: December 20, 2006

**No. 05-6887**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| JOVAN MENDIZABAL, | ) | EASTERN DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

Before: MARTIN and COOK, Circuit Judges; and BERTELSMAN, District Judge.[*]

COOK, Circuit Judge. Jovan Mendizabal was convicted of conspiracy to distribute or possess with intent to distribute five kilograms or more of cocaine, 21 U.S.C. § 841(a), and possession of a firearm in furtherance of a drug trafficking offense, 18 U.S.C. § 924(c). Mendizabal had filed two pretrial motions to suppress, alleging (1) that officers violated the knock-and-announce rule when executing a search warrant for his residence and (2) that there was insufficient probable cause to issue that search warrant. He also had moved to dismiss the indictment on the ground that the government used his immunized testimony against him. The court denied the motions, and

---

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

Mendizabal appeals. He also appeals his § 924(c) conviction on the ground that there was insufficient evidence for a jury to convict. We affirm.

I

Federal agents sought a search warrant for Jovan Mendizabal's residence in Knoxville, Tennessee. Drug Enforcement Agency (DEA) Agent Don White testified before the magistrate judge that information provided by a confidential source supported the warrant. Agent White had a history with this source, and the source claimed to have been inside Mendizabal's residence.

DEA Agent Mike Long also provided a six-page affidavit supporting issuance of the warrant, in which he stated that his training and seventeen years of experience had taught him that "drug traffickers maintain books, records, receipts, notes, ledgers, and other papers," which are "commonly maintained where drug traffickers have ready access to them, i.e. homes . . . ." The affidavit states that a confidential source told Agent Long that he purchased cocaine from Mendizabal on a weekly basis and that Mendizabal claimed people owed him about $20,000 from his cocaine sales. The affidavit also states that on October 1, 2004, the source went to Mendizabal's home to arrange future cocaine purchases. The source was wearing a recording device that allowed Agent Long to overhear Mendizabal discuss his cocaine business. Several days later, the source met with Mendizabal in a

parking lot and purchased three ounces of cocaine, for which he paid $2,700 in marked bills. The magistrate judge issued the warrant.

Before officers executed the search warrant, Agent Long conducted a controlled purchase at the Knoxville Center Mall and arrested Mendizabal. Officers confiscated about 250 grams of cocaine from Mendizabal's vehicle. Agent Long and another officer interviewed him, and according to Agent Long's notes, Mendizabal admitted to selling ten customers cocaine in four-and-one-half-ounce quantities or less.

Agent White waited until Mendizabal was in custody before executing the search warrant. Agent White knocked three times at Mendizabal's front door and announced the officers' presence. When there was no response after about ten seconds, the officers hit the front door with a ram. Eventually, a door panel popped out and Agent White was able to reach in, unlock the door, and go inside. This entry took about forty-five seconds to one minute. During the search, officers seized cocaine and a Smith & Wesson Walther P22 handgun from a safe.

II

The following day, authorities charged Mendizabal with conspiracy to distribute or possess with intent to distribute 500 grams or more of cocaine. Mendizabal made a proffer, and authorities used this information to charge Chris Curry and Mike Boyd with conspiracy to distribute or possess with intent to distribute five kilograms or more of cocaine. Authorities then filed a Superseding

Indictment against Mendizabal charging five kilograms of cocaine (an increase from the original charge of 500 grams or more). The Superseding Indictment also charged Mendizabal with possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c).

Before trial, Mendizabal moved to suppress evidence, arguing (1) that officers executing the warrant did not comply with federal "knock-and-announce" requirements, and (2) that there was insufficient probable cause to support the issuance of a search warrant. The district court adopted the magistrate judge's recommendations and denied the motions to suppress. First, the court found the officers justified in entering only ten seconds after knocking because they did not know whether Mendizabal's roommates had drugs or access to weapons. Second, the district court rejected Mendizabal's argument that the search warrant did not "make any connection between the residence to be searched and the facts of criminal activity that the officer set out in his affidavit." Moreover, the court concluded that the officers acted with objective good faith in relying on the search warrant.

Mendizabal also moved for a *Kastigar* hearing or, alternatively, to dismiss the indictment, alleging that authorities improperly used statements for which he had been granted immunity. Mendizabal feared both that the statements in his proffer might have been used in the investigation and presented to the grand jury and that they might be used at his trial. The district judge adopted the magistrate judge's finding that a *Kastigar* hearing was not required. After reviewing grand-jury testimony, the district court agreed that apart from one question and one answer regarding

Mendizabal's gun possession, there was no evidence that the government breached the proffer agreement. And the district court agreed that even if the information about the gun came from Mendizabal's proffer, there was no material breach of the proffer agreement because other evidence before the grand jury established probable cause on the § 924(c) count.

A jury convicted Mendizabal on both counts, and the court sentenced him to 120 months on the drug conspiracy count and a mandatory consecutive term of 60 months on the § 924(c) count. On appeal, Mendizabal renews the arguments from his three pre-trial motions and also argues that there was insufficient proof for a reasonable jury to conclude that he possessed a firearm in furtherance of a drug trafficking crime.

III

Probable Cause in Support of the Search Warrant

Mendizabal argues that the district court should have suppressed evidence seized from his residence because the search warrant did not identify a nexus between Mendizabal's residence and his alleged drug activities. When reviewing a district court's denial of a motion to suppress, we review factual findings for clear error and conclusions of law de novo. *United States v. Pruitt*, 458 F.3d 477, 480 (6th Cir. 2006). We consider the evidence in the light most likely to support the district court's conclusion. *Id.* Applying this standard, we discern no error in the district court's denial of the suppression motion.

The Fourth Amendment provides that a judge shall not issue a search warrant unless there is a finding of "probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Probable cause to search is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "There must . . . be a 'nexus between the place to be searched and the evidence sought.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)).

We conclude that a nexus existed because the search warrant was not limited to a search for drugs. Rather, it also directed officers to look for documentary evidence of drug sales (books, records, letters of credit, and electronic media), as well as drug paraphernalia such as scales and baggies. Agent Long testified that documentation and paraphernalia are often found in drug dealers' homes, and this testimony is consistent with this court's prior observations. *See, e.g.*, *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998) ("[I]n the case of drug dealers, evidence is likely to be found where the dealers live.") (citation omitted). Therefore, even absent evidence that any drug transactions occurred at Mendizabal's house, there was "a fair probability that contraband or evidence of a crime [would] be found" in the house. *See Gates*, 462 U.S. at 238.

Even if the warrant failed to show a nexus between Mendizabal's criminal activities and his house—and thus was not supported by probable cause—the *Leon* good-faith exception would allow use of the evidence found at Mendizabal's residence. Although Mendizabal characterizes Agent

Long's affidavit as "bare bones" and alleges that "the first four pages of the affidavit, the last page and attachment B are simply conclusory allegations that would be made in virtually any similar case by the affiant," we do not agree that it fails under *Leon*.

The affidavit informs that the confidential source corroborated his relationship with Mendizabal; the source made an appointment to meet with Mendizabal at his home and confirmed that Mendizabal resided there; Mendizabal discussed his cocaine business at his home; and in Agent Long's experience, drug traffickers keep records of their transactions in their homes. This information is not "so vague as to be conclusory or meaningless." *United States v. Frazier*, 423 F.3d 526, 536 (6th Cir. 2005) (quoting *Carpenter*, 360 F.3d at 596). And though Attachment B does list items often described in other search warrants, it also lists examples of documentary evidence and paraphernalia that one would expect to find at a trafficker's residence. Thus, the officers were objectively reasonable in relying on the warrant.

The Knock-and-Announce Rule

Mendizabal argues that the district court should have suppressed evidence seized from his home because DEA officers violated the knock-and-announce rule. But the Supreme Court's decision in *Hudson v. Michigan*, 126 S. Ct. 2159 (2006), forecloses this challenge.

In *Hudson*, officers forcibly entered the defendant's home only three to five seconds after knocking and announcing their presence. *Id.* at 2162. The prosecution conceded a knock-and-

announce violation, *id.* at 2163, but the Supreme Court held that the exclusionary rule did not apply because the officers inevitably would have discovered the evidence upon execution of the valid search warrant. *Id.* at 2165. In this case, the officers also had a valid search warrant, so even if there were a knock-and-announce violation, the evidence discovered in Mendizabal's house need not be suppressed.

Sufficiency of Proof on the § 924(c) Charge

Mendizabal argues that insufficient evidence supported his conviction under 18 U.S.C. § 924(c), and thus that the district court erred by denying his motion to acquit. Reviewing the district court's decision de novo, *United States v. Hartsel*, 199 F.3d 812, 815 (6th Cir. 1999), we cannot agree with Mendizabal's argument that no rational trier of fact could have found him guilty beyond a reasonable doubt. *See, e.g.*, *United States v. Humphrey*, 279 F.3d 372, 378 (6th Cir. 2002).

Mendizabal claims a dearth of evidence showed that his (undisputed) possession of a firearm was "in furtherance of" his underlying drug trafficking offense. In evaluating similar sufficiency challenges, courts have asked whether the gun was found in close proximity to the defendant because if the defendant can use the gun to protect himself or his drugs, then the gun "furthers" the defendant's drug trafficking offense. *See, e.g.*, *United States v. Swafford*, 385 F.3d 1026 (6th Cir. 2004); *United States v. Mackey*, 265 F.3d 457 (6th Cir. 2001) (inquiring whether the gun was "strategically located" within the defendant's reach); *United States v. Iiland*, 254 F.3d 1264 (10th Cir. 2001). Conversely, when the gun is "found far from the locus of drug activities," where it is

"not readily accessible . . . when [the defendant] would have been involved in drug conspiracy activities for which possession of a gun would be useful," possession of the gun might not be "in furtherance of" a drug trafficking offense. *See United States v. Rios*, 449 F.3d 1009, 1016 (9th Cir. 2006). In this case, Mendizabal's gun was found in a safe along with the conspiracy-linked cocaine, where it would have been very useful in protecting that cocaine. Further, the gun was loaded, which is one consideration indicating it was readily available for use. *See Mackey*, 265 F.3d at 462. Drawing all inferences in support of the verdict, we conclude that a rational trier of fact could have found that Mendizabal possessed this gun in furtherance of the cocaine conspiracy. *See Hartsel*, 199 F.3d at 815.

Breach of the Proffer Agreement

Mendizabal argues that the district court erred by not holding a *Kastigar* evidentiary hearing about the possible use of immunized testimony against him. But because Mendizabal had only "pocket immunity," a *Kastigar* hearing was not required, and we review only to determine whether the government materially breached the proffer agreement. We conclude it did not.

Whether the defendant is entitled to a *Kastigar* hearing depends on the which of two types of immunity the government granted. The first type, "statutory immunity," stems from the rights granted by the federal witness immunity statute, 18 U.S.C. § 6002. A grant of statutory immunity "assures a witness that his immunized testimony will be inadmissible in any future criminal proceeding, as will be any evidence obtained by prosecutors directly or indirectly as a result of the

immunized testimony." *United States v. Turner*, 936 F.2d 221, 223–24 (6th Cir. 1991). So called "pocket immunity" (also called "informal immunity"),on the other hand, hinges on the prosecutor's informal assurance of immunity; this approach bypasses the formalities required to grant statutory immunity. *Id*. at 223; *see also Bank of Nova Scotia v. United States*, 487 U.S. 250, 258 (1998).

When federal authorities later prosecute a defendant who has been granted statutory immunity, he can request a "*Kastigar* hearing" to require prosecutors to prove that they are not using his immunized testimony against him. *See Kastigar v. United States*, 406 U.S. 441 (1972); *United States v. Ford*, 176 F.3d 376, 381 (6th Cir. 1999). A defendant granted only pocket immunity, however, lacks grounds for insisting on a *Kastigar* hearing, and normal contract law and remedies govern any alleged breach by prosecutors. *See United States v. Fitch*, 964 F.2d 571, 574 (6th Cir. 1992); *Turner*, 936 F.2d at 224.

The language of Mendizabal's proffer letter negates any doubt about the type of immunity the government granted:

> [T]he government may make derivative use and may pursue any investigative leads suggested by any statements or other information provided by your client. This provision is necessary in order to eliminate the necessity for a *Kastigar* hearing at which the government would have to prove that the evidence it would introduce at trial is not tainted by any statements or other information provided by your client during the proffer or discussion.

On its face, the agreement allows the government to make derivative use of Mendizabal's testimony. This is classic "pocket immunity," so Mendizabal can only seek contractual remedies. But any

contractual argument must fail because the government did not materially breach the proffer agreement.

Mendizabal cannot successfully argue that the government breached the proffer agreement when it raised the amount of cocaine charged from 500 grams to five kilograms. The government contends that it increased the amount based on Mendizabal's post-arrest/pre-proffer statements and on the testimony of co-defendants Curry and Boyd. Mendizabal points out that Agent Long's report of his post-arrest statement was actually prepared *post-proffer*. He insists that this demonstrates that "the government has confused facts which he presented in the [proffer] meeting as having been presented at the [post-arrest] meeting." We find this assertion unconvincing and note also that the testimony of Curry and Boyd in itself supports the government's increase in the amount of cocaine charged. We therefore discern no error in the district court's conclusion that the government did not materially breach the proffer agreement as it relates to the drug charge.

Similarly, Mendizabal cannot successfully argue that the government materially breached the proffer agreement by using his immunized testimony to charge him with possession of a firearm in furtherance of a drug offense. The district court reviewed the grand jury testimony and found one question and answer that may have been based on information contained in Mendizabal's proffer:

[AUSA Marsh:] Did he [Jovan Mendizabal] admit that was his gun?
[Witness:] Yes

Two other factual points could suggest a breach: (1) Agent Long's report of the post-arrest interview does not mention the gun, and (2) the district court agreed that it was unlikely that the information came from Curry or Boyd.

Assuming this information did come to the government's attention from the proffer, any resulting breach was not a *material* breach. *See Fitch*, 964 F.2d at 574 (holding that unless the breach of an informal immunity agreement is "material and substantial," the aggrieved party cannot invoke contract-based remedies). The grand jury most likely decided that there was probable cause to indict Mendizabal on the § 924(c) charge because authorities found the gun next to cocaine in his safe—not because he admitted to Agent Long that it was his gun. Therefore, we discern no error in the district court's conclusion that the government did not materially breach the proffer agreement when it charged Mendizabal with a violation of 18 U.S.C. § 924(c) in the Superseding Indictment.

IV

For the reasons stated above, we affirm Mendizabal's conviction.