[Cite as *State v. Panezich*, 2018-Ohio-2812.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

CLIFTON J. PANEZICH,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 17 MA 0087**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2016 CR 505

**BEFORE:**
Carol Ann Robb, Gene Donofrio, Kathleen Bartlett, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Paul J. Gains*, Mahoning County Prosecutor, *Atty. Ralph M. Rivera*, Assistant Prosecutor, 21 W. Boardman St., 6th Floor., Youngstown, Ohio 44503, for Plaintiff-Appellee and

*Atty. Percy Squire*, Percy Squire Co., LLC, 341 S. Third Street, Suite 10, Columbus, Ohio 43215 for Defendant-Appellant.

Dated: June 29, 2018

**Robb, P.J.**

{¶1} Defendant-Appellant Clifton Panezich appeals his conviction in Mahoning County Common Pleas Court for aggravated theft, telecommunications fraud, three counts of forgery, identity fraud, money laundering, and engaging in a pattern of corrupt activity. Appellant pled guilty to the offenses following a plea agreement. Appellant asserts his guilty plea was coerced and the plea was derived through prosecutorial misconduct. Neither of these arguments have merit. The convictions are affirmed.

Statement of the Case

{¶2} In late 2015, a single count complaint was filed in Mahoning County Court Number 4 against Appellant. The complaint alleged Appellant engaged in a pattern of corrupt activity in violation R.C. 2923.22, a first-degree felony, from 2010 through 2015. 12/16/15 Complaint. The complaint was filed as a result of a 2013 investigation by the FBI, Canfield Police Department, and other Northeast Ohio police departments. The alleged pattern of corrupt activity was a fraudulent scheme to sell sports memorabilia that was falsely purported to be authentic on platforms such as eBay and PayPal.

{¶3} Appellant entered a not guilty plea to the complaint, bond was set, and he was bound over to Mahoning County Common Pleas Court. Following bind over, Appellant waived the time limit for presentation of the matter to the grand jury and waived his speedy trial rights. 6/3/16 J.E.

{¶4} In October 2016, Appellant moved to modify the conditions of his bail; he wanted the ability to leave the state of Ohio. 10/3/16 Motion to Modify Bond. Appellant was a resident of Nevada at the time of the complaint. He had previously resided in Ohio and still owned a home in Youngstown, Ohio. The bond set by the county court did not permit Appellant to leave the state of Ohio. Appellant also filed a motion to dismiss alleging speedy trial violations. 10/3/16 Motion to Dismiss. The trial court denied both motions. 10/6/16 J.E.

{¶5} The same day as the denial of the motions, the grand jury indicted Appellant. 10/6/16 Indictment. A joint twenty-two count indictment was issued against

Appellant, Craig McCormick, and Jason Moore for the alleged fraudulent scheme to sell sports memorabilia on the internet that was falsely purported to be authentic. 10/6/16 Indictment. Counts one through seven and twenty-two were against Appellant. 10/6/16 Indictment. It was alleged the criminal activity for all applicable counts occurred in Mahoning County between 2010 and 2015. Count one alleged Appellant committed aggravated theft, a violation of R.C. 2913.02(A)(3)(B)(1)(2) and R.C. 2913.61, a second-degree felony. 10/6/16 Indictment. Count two alleged Appellant committed telecommunications fraud, a violation of R.C. 2913.05(A)(C), a first-degree felony. 10/6/16 Indictment. Counts three, four, and five alleged Appellant committed forgery in violation of R.C. 2913.31(A)(1)(C)(1)(a)(b), (A)(2)(C)(1)(a)(b) and (A)(3)(C)(1)(a)(b), respectively. 10/6/16 Indictment. All three counts also asserted Appellant violated R.C. 2913.61. 10/6/16 Indictment. The forgery charges were third-degree felonies. 10/6/16 Indictment. Count six alleged Appellant committed identity fraud in violation of R.C. 2913.49(B)(1)(I)(2), a second-degree felony. 10/6/16 Indictment. Count seven alleged Appellant committed money laundering in violation of R.C. 1315.99(C), a third-degree felony. 10/6/16 Indictment. Count twenty-two alleged Appellant along with McCormick and Moore engaged in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1)(B), a first-degree felony. 10/6/16 Indictment. The indictment also contained a forfeiture specification pursuant to R.C. Chapter 2981. 10/6/16 Indictment.

{¶6} The Common Pleas Court then held a bond hearing. The bond issued by the County Court was increased and Appellant was ordered to remain in Ohio. 10/14/16 J.E. Appellant entered a not guilty plea to the indictment. 10/14/16 J.E.

{¶7} Appellant filed multiple pretrial motions. He moved for relief from joinder, change of venue, bill of particulars, disclosure of juvenile records of the state's witnesses, permission to submit a detailed jury questionnaire, disclosure of exculpatory and impeachment evidence, the ability to appear in civilian clothing without restraints, copies of the grand jury proceedings, and extension of time to file pretrial motions. 10/26/16 Motions for Relief from Joinder and Bill of Particulars; 11/7/16 Motions for change of venue, disclosure of juvenile records, detailed jury questionnaire, disclosure of exculpatory evidence, permission to appear in civilian clothes without restraints, grand jury transcripts, and extension to file pretrial motions. The trial court overruled the

Case No. 17 MA 0087

motion for change of venue, grand jury transcripts, and permission to submit detailed jury questionnaire. 11/9/16 J.E.; 11/14/16 J.E.s. The trial court granted the request for disclosure of exculpatory evidence and for extension of time to file pretrial motions. 11/9/16 J.E.s. Appellant was also permitted to appear in civilian clothes, but he was not permitted to appear without restraints. 11/14/16 J.E.

**{¶8}** On December 7, 2016 Appellant filed a motion for a *Kastigar* hearing and to suppress all evidence derived in violation of *Kastigar*. Appellant alleged the state asserted in open court on multiple occasions Appellant confessed. Appellant contended this confession occurred during his January 30, 2015 testimony that was given under "proffered protections." He contended using the statements to indict him was not permissible under the United Stated Supreme Court decision in *Kastigar v. United States*, 406 U.S. 441 (1971) and Ohio Supreme Court decision in *State v. Conrad*, 50 Ohio St.3d 1, 552 N.E.2d 214 (1990). He implied the statements were used to obtain the grand jury indictment, and accordingly, if the state could not produce evidence from a source other than his proffer, the case must be dismissed. 12/7/16 Motion.

**{¶9}** On December 13, 2016 a plea hearing was held. 12/16/16 J.E. At this hearing, Appellant withdrew "the Motion to Suppress." 12/16/16 J.E. The state amended count two of the indictment, telecommunications fraud, from a first-degree felony to a second-degree felony. 12/20/16 J.E. Appellant entered a guilty plea to the indictment as amended. 12/20/16 J.E. The state agreed to recommend an aggregate sentence of three to seven years. 12/20/16 J.E. It would recommend three years on counts one through seven to run concurrent to each other and to run concurrent to a recommended three to seven year sentence on count twenty-two. 12/20/16 J.E.

**{¶10}** Sentencing occurred on April 11, 2017. The state followed the plea agreement and recommended a sentence between three to seven years. Appellant asked for a lesser sentence of 30 to 37 months, which would have been the sentencing range if the charges were federal charges. In Appellant's sentencing memorandum and the attachments to it, there was an indication that the original plea agreement, which occurred prior to the grand jury indictment, was for the state to recommend a three to seven year sentence. 4/10/17 Defendant's Sentencing Memorandum. Attached to the memorandum was a report from the FBI. That report stated, "Panezich was advised he

was being interviewed under proffered protection. Panezich agreed to plead guilty to the State of Ohio charges, further agreeing to a sentencing range of 3 to 7 years. As a condition of Panezich's plea, the Mahoning County Prosecutor's Office would not oppose judicial release for Rose Panezich (Panezich's mother) after 6 month incarceration." 4/10/17 Defendant's Sentencing Memorandum, Exhibit A.

**{¶11}** The trial court sentenced Appellant to an aggregate sentence of six years. 5/10/17 J.E. Appellant received four years for aggravated theft, six years for telecommunications fraud, twenty-four months for each count of forgery, four years for identity fraud, twenty-four months for money laundering, and six years for engaging in a pattern of corrupt activity. All sentences were ordered to run concurrent to each other. 5/10/17 J.E.

**{¶12}** Appellant timely appealed from his conviction.

<u>First Assignment of Error</u>

"Enforcement of Defendant's guilty plea in this action is unconstitutional under both the Fourteenth Amendment Due Process clause and the Ohio Constitution for the reason the plea was coerced."

**{¶13}** Appellant argues his guilty plea was not knowing, intelligent, and voluntary.

**{¶14}** The Ohio Supreme Court has stated, "When a defendant enters a plea in a criminal case, the plea must be made knowingly, intelligently, and voluntarily." *State v. Engle*, 74 Ohio St.3d 525, 527, 1996–Ohio–179, 660 N.E.2d 450. "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct.1709 (1969). "Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences." *Kercheval v. United States*, 274 U.S. 220, 223, 47 S.Ct. 582 (1927).

**{¶15}** Typically when appellants argue their plea was not entered into knowingly, intelligently, and voluntarily the argument is the mandates of Crim.R. 11(C) were not followed. The underlying purpose of Crim.R. 11(C) is to convey certain information to a defendant so that he or she can make a voluntary and intelligent decision regarding

whether to plead guilty. *State v. Ballard*, 66 Ohio St.2d 473, 479–480, 423 N.E.2d 115 (1981). A plea colloquy under Crim.R. 11(C) requires advisements on certain enumerated constitutional and nonconstitutional rights before accepting a felony guilty or no contest plea. *State v. Clark*, 119 Ohio St.3d 239, 2008–Ohio–3748, 893 N.E.2d 462, ¶ 25–26.

**{¶16}** However, Appellant does not argue the trial court failed to comply with the mandates of Crim.R. 11(C) during the plea colloquy; the plea hearing transcript was not made a part of the record before us. Therefore, the issue before us is not compliance with Crim.R. 11(C).

**{¶17}** Appellant argues his plea was not knowing, intelligent, and voluntary because it was coerced. A guilty plea, if coerced or induced by promises or threats renders the plea involuntary. *State v. Kelly*, 8th Dist. Nos. 91875 and 91876, 2010–Ohio–432, ¶ 21, citing *State v. Allen*, 6th Dist. No. S–09–004, 2009–Ohio–3799, ¶ 16.

**{¶18}** Appellant contends coercion is demonstrated in eight different ways. Each will be discussed in turn.

**{¶19}** First, he asserts his proffer was induced by promises of a certain punishment, but following the proffer the prosecutor improperly refused to recommend that punishment.

**{¶20}** Attached to Appellant's sentencing memorandum is a record from the FBI - a February 11, 2015 interview with Appellant. Present at the interview were Appellant, FBI agents, detectives from the Canfield Police Department, and two prosecutors from the Mahoning County Prosecutor's Office. 4/10/17 Defendant's Sentencing Memorandum. The second paragraph of the report states:

> Panezich was advised he was being interviewed under proffered protection. Panezich agreed to plead guilty to the State of Ohio charges, further agreeing to a sentencing range of 3 to 7 years. As a condition to Panezich's plea, Mahoning County Prosecutor's Office would not oppose judicial release for Rose Panezich (Panezich's mother) after 6 month incarceration. In addition, the Mahoning County Prosecutor's Office would not charge Panezich's grandmother or father.

Case No. 17 MA 0087

4/10/17 Defendant's Sentencing Memorandum, Exhibit A.

{¶21} Also, included in the trial court records was a letter from one of the Mahoning County Prosecutors that was present at the February 2015 interview. 4/10/17 Defendant's Sentencing Memorandum Exhibit C. The letter indicated Mahoning County was in the process of presenting the matter to the grand jury and the potential charges would include but would not be limited to the engaging in a pattern of corrupt activity charge. 4/10/17 Defendant's Sentencing Memorandum Exhibit C. The letter indicated some of the other charges would be telecommunications fraud, theft, identify fraud, money laundering, and forgery. 4/10/17 Defendant's Sentencing Memorandum Exhibit C. However, instead of obtaining a grand jury indictment, if Appellant pled guilty to the information charging Appellant with one count of engaging in a pattern of corrupt activity, then Mahoning County would recommend a sentence of "five (5) to seven (7) years." 4/10/17 Defendant's Sentencing Memorandum Exhibit C. The letter is dated March 25, 2015. 4/10/17 Defendant's Sentencing Memorandum Exhibit C. The letter gave Appellant until April 10, 2015 to decide. 4/10/17 Defendant's Sentencing Memorandum Exhibit C.

{¶22} As can be seen, the statement in the FBI report regarding the sentence the Mahoning County Prosecutor's office would recommend at sentencing to a guilty plea does not match the statement made in the March 2015 letter. The record is devoid of what communication occurred between the prosecutor's office and Panezich from the receipt of the March 2015 letter until the grand jury indictment in October 2016. The record does indicate a plea hearing was scheduled for September 26, 2016, but it was cancelled; Appellant indicated this in his October 2016 Motion to Modify Bond. 10/3/16 Motion to Modify Bond. The motion to modify bond indicates, due to concerns of the terms of the agreement, Appellant entered a not guilty plea on that date. 10/3/16 Motion to Modify Bond. The record, however, does not contain a judgment entry concerning this alleged September 26, 2016 pretrial/plea hearing. 10/3/16 Motion to Modify Bond.

{¶23} Thus, it is unclear whether the five year recommendation instead of three years in the letter was a typographical error or if the prosecutor was altering the offer.

There is no indication that between the letter and the indictment, the discrepancy between the five and three year minimum recommendation was fixed.

**{¶24}** Appellant did eventually plead guilty to the indictment as amended and the prosecutor agreed to recommend an aggregate three to seven year sentence. Admittedly, the indictment contained seven additional charges not in the information – telecommunications fraud, aggravated theft, money laundering, three counts of forgery, and identity fraud. However, the agreement for the recommended three to seven year sentence was the same as the agreement made in February 2015. Given that the recommended sentencing range is the same as what was stated in February 2015 and what was recommended at the sentencing hearing in April 2017, it is unclear how any misstatement or alteration on the part of the prosecutor to the February 2015 agreement coerced him into pleading guilty in April 2017.

**{¶25}** Appellant's second, third and fourth alleged acts of coercion concern bail. He contends the prosecutor asked for excessive bail in the amount of $500,000 as a means to coerce Appellant into pleading guilty. Appellant argues the prosecuting attorney justified the request for excessive bail by stating Appellant confessed. This alleged confession came from the proffer. Appellant asserts the trial court ordered the excessive bail in order to coerce Appellant into entering a guilty plea.

**{¶26}** Prior to the case being bound over to Mahoning County Common Pleas Court, the county court set bond at $100,000. Following the indictment, a bond hearing was held before the Common Pleas Court. The court set bond at $500,000. Given the fact that there were eight charges, the charges were first, second, and third degree felonies, and Appellant's primary address was Nevada, setting the bond at $500,000 does not appear excessive or a means to coerce Appellant into pleading guilty. A transcript of the bond hearing was not properly made a part of the record. Appellant did attach a copy to the appellate brief, but it was struck. 12/11/17 J.E. (striking all attachments to the appellate brief). Appellant did not follow the proper rules to have the transcript made a part of the record. The record does not indicate what amount of bail the state requested. Furthermore, the record does not indicate the state supported its request for bail by stating Appellant confessed. Nothing in the record properly before us indicates the state told the court Appellant had confessed.

**{¶27}** Consequently, from the record before us, there is no evidence of coercion on the part of the state.

**{¶28}** Furthermore, the court's action of setting bond at $500,000 does not indicate coercion on the part of the court. Persons accused of crimes are "bailable by sufficient sureties" and "[e]xcessive bail shall not be required." Section 9, Article I, Ohio Constitution. The purpose of bail is to secure the attendance of the accused at trial. *Jenkins v. Billy*, 43 Ohio St.3d 84, 85, 538 N.E.2d 1045 (1989). As stated above, the degree of the felonies, the number of felonies charged, and Appellant's residence in Nevada justified the amount of bail.

**{¶29}** Generally, a plea is involuntary and unconstitutional "if the judge's active conduct could lead a defendant to believe he cannot get a fair trial because the judge thinks that a trial is a futile exercise or that the judge would be biased against him at trial." *State v. Byrd*, 63 Ohio St.2d 288, 293-294, 407 N.E.2d 1384 (1980). It is noted that usually when an appellant argues the trial court coerced him into entering the plea, the argument is based on the trial court's participation in the plea bargaining process. *Id.* at 292 (potential for coerced guilty pleas when judge participates in plea agreement process); *State v. Davis*, 4th Dist. No. 13CA3589, 2014-Ohio-5371, ¶ 31-34 (judicial participation is strongly discouraged but does not render a plea per se involuntary). There is no evidence in the record indicating the trial court's conduct during the bail hearing and order was coercive. Moreover, nothing in the record suggests the trial court participated in the plea bargaining process.

**{¶30}** Next, Appellant asserts that in order to get him to plead guilty the prosecuting attorney alleged Appellant's mother, Rose Panezich, was guilty of a probation violation, the trial court found her guilty of probation violation, and she remained incarcerated until Appellant pled guilty. In the filings before the trial court, Appellant contended his mother was subpoenaed to testify at the grand jury proceedings. Before she could testify the prosecutor told her she would not be put on the stand because he believed she would lie and he was going to tell her probation officer she violated her probation. She was then incarcerated.

**{¶31}** The record in this case does indicate Rose Panezich was charged in connection with the criminal enterprise alleged against Appellant and she entered a plea

agreement. The record before us, however, does not confirm Appellant's version of events; the record is devoid of any indication whether Rose Panezich testified before the grand jury and what the terms of her plea agreement were. Part of Rose Panezich's plea agreement and a condition of her probation may have been to cooperate with the state against any and all co-defendants and accomplices, which would include Appellant. This is a common condition set forth in plea agreements and probation. If she did not cooperate at the grand jury proceedings or if she did not cooperate at the interview with the prosecutor in preparation for the grand jury proceedings, then there would be a basis for a probation violation.

{¶32} Furthermore, part of Appellant's argument is that it was coercive to indicate his mother would not be released from incarceration unless he pled guilty. The state's indication that it would support her release if he pled guilty does not amount to coercion if there is no evidence showing Appellant was incompetent or incapable of making his own decision. *State v. Slater*, 8th Dist. No. 101358, 2014–Ohio–5552, ¶ 13 (familial pressure to enter plea does not equate to coercion in the absence of evidence that the defendant is incapable of making his own decision); *State v. Parham*, 11th Dist. No. 2011-P-0017, 2012-Ohio-2833, ¶ 26 (familial pressure does not result in a coerced plea). Appellate courts have found that a plea is not coerced when a defendant pleads guilty in exchange for the dismissal of charges against his family members. *State v. Kesterson*, 2d Dist. No. 95 CA 39, 1996 WL 280753 (May 24, 1996) (holding that, although the defendant "may have been given a choice between cooperating with the authorities or seeing his wife arrested," this did not raise an issue as to whether his plea was voluntary); *State v. Vild*, 8th Dist. No. 69574, 1996 WL 492273 (Aug. 29, 1996) (no coercion was found where appellant's plea was made in exchange for the dismissal of charges against his family members).

{¶33} Appellant's sixth and seventh alleged acts of coercion concern the grand jury proceedings and his motion for a *Kastigar* hearing. The sixth allegation asserts the prosecuting attorney unlawfully presented testimony to the grand jury that was obtained through Appellant's proffer. The seventh allegation asserts the trial court induced him to plead guilty by failing to act on Appellant's request for a *Kastigar* hearing or to grant him access to the grand jury proceedings.

{¶34} Appellant moved for inspection of the grand jury proceedings. 11/7/16 Motion. The trial court denied the request. 11/9/16 JE. Appellant did not appeal that ruling. The assertion that Appellant was coerced into pleading guilty because the prosecuting attorney used his statements made to the FBI under proffered protection is dependent on those statements being used. Without a transcript there is no basis to determine whether his factual presupposition is correct. Furthermore, the trial court made no statements in its judgment entry denying the request for grand jury transcripts that could have reasonably led Appellant to believe he could not get a fair trial because the judge either suggested that trial would be futile or that he would be biased against him. *Davis*, 2014-Ohio-5371 at ¶ 34. The judgment entry merely denied the request.

{¶35} Although Appellant did not appeal the denial of the grand jury transcripts, that ruling most likely would have been upheld if it was appealed. The Ohio Supreme Court has stated grand jury proceedings are secret, and thus, a defendant has no right to inspect grand jury transcripts either before or during trial unless the "ends of justice require it and there is a showing by the defense that a particularized need for disclosure exists which outweighs the need for secrecy." *State v. Greer*, 66 Ohio St.2d 139, 420 N.E.2d 982 (1981), paragraph two of the syllabus. A defendant establishes a particularized need for grand jury transcripts when the circumstances reveal a probability that "the failure to disclose the testimony will deprive the defendant of a fair adjudication of the allegations placed in issue by the witness' trial testimony." *Id.* at paragraph three of the syllabus. This determination is a fact question left to the sound discretion of the trial court. *Id.* at paragraphs one and three of the syllabus. Accordingly, "[a] decision denying the release of the grand jury transcript will not be reversed absent an abuse of discretion." *State v. Coley*, 93 Ohio St.3d 253, 261, 754 N.E.2d 1129 (2001). An abuse of discretion is conduct that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "A review under the abuse-of-discretion standard is a deferential review." *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 14.

{¶36} There is nothing in the record indicting Appellant could demonstrate a particularized need for the disclosure that outweighs the need for secrecy. Appellant was not able to demonstrate the failure to disclose the testimony deprived him of a fair

adjudication of the allegations. If Appellant had not withdrawn his request for a *Kastigar* hearing and pled guilty, the issue of whether Appellant statements were protected from being used in state court could have been decided. The second district has succinctly explained the United States Supreme Court ruling in *Kastigar* and the test used for addressing a claim that immunized testimony will be improperly used by the state at trial:

> In *Kastigar*, the United States Supreme Court examined the constitutionality of a federal statute that provides immunity for witnesses who are then required to make statements against their interests. Section 6002, Title 18, United States Code. The Supreme Court held that the statute could be used to compel testimony from an unwilling witness over a claim of a Fifth Amendment privilege against self-incrimination because the statute grants immunity from use of the compelled testimony and evidence derived therefrom in any subsequent criminal proceeding which is coextensive with the scope of the privilege. In other words, because the statute insures that a witness's immunized testimony will be inadmissible in any future criminal proceeding, as will be any evidence obtained by prosecutors directly or indirectly as a result of the immunized testimony, the protections afforded by the Fifth Amendment are not denied. *United States v. Orlando* (6th Cir., 2002), 281 F.3d 586, citing *United States v. Turner* (6th Cir., 1991), 936 F.2d 221, 223–224. *Kastigar* also adopted a two part test to be used when a witness claims that his or her immunized testimony was used. First, the government must deny any intent to use of the accused's own immunized testimony against him or her in a criminal case. Second, the government must affirmatively prove that all of the evidence proposed to be used is derived from legitimate sources, wholly independent of the compelled (immunized) testimony.

*State v. Dillon*, 2d Dist. No. 05CA1674, 2006-Ohio-4931, ¶ 15.

**{¶37}** The *Kastigar* hearing could have ensured he had a fair adjudication of the allegations against him. Thus, there was no particularized need for the grand jury

transcripts and no indication the grand jury proceedings were used to coerce him into pleading guilty.

{¶38} Furthermore, it is important to note that although Appellant claims the trial court failed to act on his *Kastigar* request, the record disputes that allegation. A trial court judgment entry indicates Appellant withdrew his suppression motion. 12/16/16 J.E. The only suppression motion filed was titled, "Motion for a *Kastigar* Hearing and to Suppress all Evidence Derived in Violation of Kastigar." 12/7/16 Motion. Therefore, it cannot be claimed the trial court's disregard of the hearing request is evidence of coercion because the request was withdrawn, not disregarded.

{¶39} Lastly, Appellant asserts he was coerced into entering the guilty plea by the trial court's failure to rule on multiple pretrial motions. Although Appellant did file multiple pretrial motions, the record does not support the assertion that the trial court failed to rule on multiple pretrial motions.

{¶40} Appellant moved for relief from joinder, change of venue, a bill of particulars, disclosure of juvenile records of the state's witnesses, permission to submit a detailed jury questionnaire, disclosure of exculpatory and impeachment evidence, the ability to appear in civilian clothing without restraints, copies of the grand jury proceedings, an extension of time to file pretrial motions, and a motion for a *Kastigar* hearing and to suppress all evidence derived in violation of *Kastigar*. The trial court ruled on all motions except the request for a bill of particulars, relief from joinder, disclosure of juvenile records, and the motion relating to the *Kastigar* request. However, as stated above, the motion related to the *Kastigar* request was withdrawn. Therefore failing to rule on this motion cannot be considered to be part of the alleged coercion.

{¶41} One of the motions not ruled on was the request for a bill of particulars. We have previously explained that in light of Mahoning County's policy of "open discovery" in the prosecutor's office, where all of the state's evidence is available for the defendant to view in preparation of trial, the information that would be included in a bill of particulars is readily available to the defendant if the state possesses such information. *State v. Kimbrough*, 7th Dist. No. 08-MA-187, 2009-Ohio-6875, ¶ 19, citing *State v. Brown*, 7th Dist. No. 03-MA32, 2005-Ohio-2939, at ¶ 88. That does not mean a

bill of particulars is not required in Mahoning County. *Kimbrough*. However, in order to demonstrate the failure to provide a timely requested bill of particulars requires reversal of the conviction, an appellant must demonstrate his "lack of knowledge concerning the specific facts a bill of particulars would have provided him actually prejudiced him in his ability to fairly defend himself." *State v. Chinn*, 85 Ohio St.3d 548, 569, 709 N.E.2d 1166 (1999). Appellant cannot meet that test. The record in this case indicates all of the discovery was made available to him. 11/23/16 Request and Discovery Demand Notice and Receipt. Appellant had a conversation with the FBI and the Mahoning County Prosecutor's office. Appellant was aware of the facts alleged against him.

**{¶42}** Also, the general rule is pretrial motions not ruled on are presumed to be overruled. *See State v. Duncan*, 8th Dist. No. 97208, 2012-Ohio-3683, ¶ 4 (motions not ruled on when a trial court enters final judgment are considered denied); *State v. Ryerson*, 12th Dist. Butler No. CA2003-06-153, 2004-Ohio-3353, ¶ 55 (there is a "general rule that pretrial motions not ruled upon will ordinarily be presumed to have been overruled"). Thus, the other two motions not ruled on were overruled. Furthermore, failing to rule on those motions out of the numerous ones filed does not amount to the trial court coercing a guilty plea. The trial court's failure to rule on the motions could not have led Appellant to believe he could not get a fair trial.

**{¶43}** Even when considering all eight allegations in conjunction with each other those allegations do not support the conclusion that Appellant was coerced into entering a guilty plea. None of the trial court's actions could have led Appellant to believe he could not get a fair trial because the court thought a trial is a futile exercise or the court would be biased against him at trial. The record does not reflect there were any strong-arm measures used to coerce Appellant into pleading guilty. Furthermore, the state's actions do not indicate coercion. It cannot be overlooked that the 2015 agreement on the sentencing range the state would recommend was the sentencing recommendation made at the 2017 sentencing.

**{¶44}** In conclusion, this assignment of error is meritless.

Second Assignment of Error

"Enforcement of Defendant's guilty plea is unconstitutional for the reason the plea was derived through prosecutorial misconduct."

Case No. 17 MA 0087

**{¶45}** Appellant argues the prosecutor committed prosecutorial misconduct when he tainted the entire process by repeated disclosure of protected proffered testimony and this violation was followed by the trial court's failure to hold a *Kastigar* hearing.

**{¶46}** "The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether the remarks prejudicially affected the accused's substantial rights." *State v. Twyford*, 94 Ohio St.3d 340, 354–55, 763 N.E.2d 122 (2002). Consequently, in order to grant a new trial for prosecutorial misconduct, we must not merely find the acts of the prosecutor to be culpable, but we must find that the acts detrimentally affected the fairness of the proceedings. *Id.* at 355, 763 N.E.2d 122, citing *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940 (1982).

**{¶47}** Appellant's argument fails because Appellant's argument is not supported by the record.

**{¶48}** The record before us does not indicate the state mentioned any proffered statements from the FBI interview. Appellant appears to focus on the state's alleged remark that he confessed. Nothing in the record before us indicates the state mentioned his confession.

**{¶49}** However, even if the state had, the record does not indicate what type of protection Appellant was offered. Appellant focuses solely on the United States Supreme Court decision in *Kastigar*. *Kastigar* dealt with statutory immunity. As explained above, in *Kastigar*, the United States Supreme Court examined the constitutionality of a federal statute that provided immunity for witnesses who were required to make statements against their interest. *Kastigar v. United States*, 406 U.S. 441, 442, 92 S.Ct. 1653 (1972). The *Kastigar* court established a two-prong test that the prosecution must satisfy where a witness makes the claim that his or her immunized testimony was used. *State v. Conrad*, 50 Ohio St.3d 1, 4, 552 N.E.2d 214, 217 (1990), citing *Kastigar* at 460-462. First, the government must deny any use of the accused's own immunized testimony against him or her in a criminal case. *Conrad* at 4, citing *Kastigar* at 460-462. Second, the government must affirmatively prove that all of the evidence to be used at trial is derived from sources wholly independent of immunized testimony. *Conrad* at 4, citing *Kastigar* at 460-462.

{¶50} In examining an Ohio immunity statute, the Ohio Supreme Court discussed the *Kastigar* holding and adopted it. *Conrad* at syllabus.

{¶51} Following *Kastigar* and *Conrad*, courts began discussing different types of immunity and whether a *Kastigar* hearing was required for different types of immunity, such as pocket immunity; i.e., informal or contractual immunity.

{¶52} For instance, the Federal Sixth Circuit differentiated statutory immunity from pocket immunity and concluded a defendant granted pocket immunity lacks grounds for insisting on a *Kastigar* hearing. *United States v. Mendizabal*, 214 Fed.Appx. 496, 501–502 (6th Cir.2006) (explaining whether a defendant is entitled to a *Kastigar* hearing is dependent on the type of immunity the government granted). Instead, for pocket immunity normal contract law and remedies govern any alleged breach by prosecutors. *Id.* The Sixth Circuit looked at the language of the proffer letter to determine which type of immunity the government granted. *Id.* The agreement in that case allowed the government to make derivative use of the defendant's testimony. *Id.* Thus, the immunity was classic "pocket immunity" and the defendant could only seek contractual remedies. *Id.* See also *United States v. Jackson*, 454 Fed.Appx. 435, 446 (6th Cir.2011) ("When a defendant voluntarily provides information to the government, however, the Fifth Amendment is not implicated, and the government may negotiate a lesser degree of immunity.")

{¶53} Similarly, in 2006, the Second Appellate District was asked to decide if the trial court erred in dismissing two counts of an indictment based on *Kastigar* violations. *Dillon*, 2006-Ohio-4931 at ¶ 15-20. The appellate court found it did err. *Id.* It explained the defendant relinquished his Fifth Amendment right and agreed to provide information as part of a negotiated plea agreement. *Id.* Thus, the rights and the duties of the parties were dictated by the plea agreement through contract principles. *Id.* at ¶ 18. It explained:

> *Kastigar*, *Conrad* and *Brocious* concerned defendants who were compelled or forced to testify pursuant to subpoena or under threat of contempt or loss of a job after they were granted immunity. That grant of immunity was coextensive with the Fifth Amendment privilege because it prohibited any use of their compelled testimony and evidence derived

therefrom in any subsequent criminal proceeding absent a waiver of the immunity that was granted. In this case, however, that threshold requirement of compulsion is not present.

Defendant was not either forced to testify or face other adverse consequences if he refused to make a statement. Rather, Defendant voluntarily elected to relinquish his Fifth Amendment right and provide information to law enforcement authorities as part of a negotiated plea agreement. In that circumstance, the Fifth Amendment privilege is voluntarily waived, and constitutional principles applicable to compelled self-incrimination are not implicated. Therefore, we conclude that the trial court erred in applying *Kastigar* as it did. *United States v. Eliason* (7th Cir., 1993), 3 F.3d 1149, 1152–1153; *United States v. Camp* (9th Cir., 1995), 72 F.3d 759, 761; *United States v. McHan* (4th Cir., 1996), 101 F.3d 1027, 1035–1036; *United States v. Gutierrez* (10th Cir., 1982), 696 F.2d 753, 756 at n. 6.

Because plea agreements are contractual in nature, they are subject to contract law principles. *Randolph v. Ohio Adult Parole Authority* (Jan. 21, 2000), Miami App. No. 99CA417. Regardless of labels such as "pocket" immunity, when in a cooperation/immunity agreement, an oral use immunity agreement, or an informal immunity agreement, a defendant voluntarily agrees to provide information to law enforcement authorities as part of a negotiated plea agreement in return for their promises that defendant's statements will not be used against him in any subsequent criminal proceeding, that agreement is contractual in nature, and in determining the meaning of the agreement and the intent of the parties, contract principles and remedies govern. *United States v. Turner*, supra; *United States v. Orlando*, supra; *United States v. Pelletier* (2nd Cir., 1990), 898 F.2d 297, 301–302. Such agreements give rise to a prosecutorial obligation not to use the information against the defendant who provided

it, not because of compelled self-incrimination but because due process requires prosecutors to scrupulously adhere to commitments made to suspects in which they induce the suspects to surrender their constitutional rights in exchange for giving information that the government needs and which simultaneously implicates the suspect. Eliason, supra.

*Id.* at ¶ 19-21. *See also Lynch v. Sheets*, S.D.Ohio No. 2:08-CV-322, 2008 WL 2835465 ("Proffer agreements are analogous to plea agreements and are governed by contract principles. *United States v. Chiu* (C.A.9, 1997), 109 F.3d 624. Ohio follows the same principles regarding proffered statements and plea agreements. *See State v. Bethel*, 110 Ohio St.3d 416, 854 N.E.2d 150, 2006-Ohio-4853.")

{¶54} The only evidence in the record of a proffer agreement is from a partial FBI report. That report states:

Panezich was advised he was being interviewed under proffered protection. Panezich agreed to plead guilty to the State of Ohio charges, further agreeing to a sentencing range of 3 to 7 years. As a condition to Panezich's plea, Mahoning County Prosecutor's Office would not oppose judicial release for Rose Panezich (Panezich's mother) after 6 month incarceration. In addition, the Mahoning County Prosecutor's Office would not charge Panezich's grandmother or father.

4/10/17 Defendant's Sentencing Memorandum, Exhibit A.

{¶55} The portion of the report we have also states Appellant "voluntarily appeared and was interviewed." 4/10/17 Defendant's Sentencing Memorandum, Exhibit A. There is no reference to a statute for immunity, but there was also no statement that the government could make derivative use of the defendant's testimony. Appellant agreed to plead to the state charges under certain conditions and he would not be charged federally.

{¶56} Although this agreement appears to be guided by contract principles and does not require a *Kastigar* hearing, we do not have to decide that issue. Whether or not he was entitled to a *Kastigar* hearing is immaterial because he withdrew the request

for one. He cannot now complain that the trial court did not hold a *Kastigar* hearing; he waived this issue by withdrawing the request.

**{¶57}** However, even if he did not waive the issue by withdrawing the request, he did waive the *Kastigar* issue when he entered a guilty plea. *United States v. Gaffney*, 469 F.3d 211, 215 (1st Cir.2006), citing *United States v. Lujan*, 324 F.3d 27, 30 (1st Cir.2003) (A guilty plea waives an appeal based on a *Kastigar* claim based on the Fifth Amendment.). As explained above, at a *Kastigar* hearing the state must satisfy a two-prong test when a person makes the claim that his or her immunized testimony was used. *Conrad*, 50 Ohio St.3d at 4, citing *Kastigar*, 406 U.S. at 460-462. First, the government must deny any use of the accused's own immunized testimony against him or her in a criminal case. *Conrad* at 4, citing *Kastigar* at 460-462. Second, the government must affirmatively prove that all of the evidence to be used at trial is derived from sources wholly independent of immunized testimony. *Conrad* at 4, citing *Kastigar* at 460-462. This is done prior to trial and as was done in this case the request for a *Kastigar* hearing was made in conjunction with a request to suppress any evidence found to be in violation of *Kastigar*. Consequently, a decision on a *Kastigar* hearing is equivalent to a decision on a motion to suppress. The general rule in Ohio is a guilty plea waives the right to challenge on appeal a trial court's decision denying a motion to suppress evidence. *State v. Obermiller*, 147 Ohio St.3d 175, 2016-Ohio-1594, 63 N.E.3d 93, ¶ 55 (stating that by pleading guilty, defendant waives "right to raise any allegations of constitutional violations flowing from the trial court's resolution of his suppression motion" and thus, defendant is "barred from raising on appeal his challenges related to the motion to suppress").

**{¶58}** Furthermore, it cannot be overlooked that although Appellant claims the state altered the 2015 agreement and then committed acts to coerce him into pleading guilty, the 2017 agreement was very similar to the 2015 agreement. The alleged alteration to the 2015 agreement was the state agreed to recommend a prison term of five to seven years instead of three to seven years as was set forth in the FBI interview. In 2017, the state agreed to and did recommend an aggregate three to seven year term. Furthermore, although Appellant claims the state made multiple comments to the trial court that he confessed, Appellant indicated he has never denied culpability. At

sentencing, Appellant indicated he has always accepted responsibility for his part in the criminal activity. Counsel for Appellant stated Appellant accepted "full responsibility for his actions" and "at no time did Mr. Panezich ever deny his culpability nor did he try to avoid accepting responsibility for what he had done." Thus, based on those two facts it is unclear how the fairness of the proceedings was affected by any alleged misconduct of the prosecutor.

**{¶59}** Consequently, for those reasons, the record does not support Appellant's argument that the prosecutor committed misconduct or the trial court failed to hold a *Kastigar* hearing. This assignment of error is meritless.

## Conclusion

**{¶60}** Both assignments of error lack merit. The convictions are affirmed.

Donofrio, J., concurs.

Bartlett, J., concurs.

[Cite as *State v. Panezich*, 2018-Ohio-2812.]

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.


## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**